Argued and submitted November 20, 1995, affirmed July 3, petition for review denied November 26, 1996 (324 Or 394)

Vickie B. LEE,
*Petitioner,*

*v.*

OREGON RACING COMMISSION,
*Respondent.*

(CA A86857)

Darrell E. LEE,
*Petitioner,*

*v.*

OREGON RACING COMMISSION,
*Respondent.*

(CA A86858)
(Cases Consolidated for Opinion)

920 P2d 554

James R. Cartwright argued the cause and filed the briefs for petitioners.

John T. Bagg, Assistant Attorney General, argued the cause for respondent. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Petitioners Vickie B. Lee and Darrell E. Lee seek review of an order of the Oregon Racing Commission (Commission) denying their applications for renewal of their racing licenses and revoking any further interest in such licenses. We consolidate their cases for the purposes of this opinion only and affirm.

The following facts are not disputed. Petitioners own and operate the New Portland Meadows, an Oregon corporation in the business of holding horse races. As required by law, petitioners obtained personal licenses from the Commission in order to participate in race meets. Those licenses were for three years and were set to expire June 30, 1994.

In March 1993, the Commission accused petitioners of multiple violations of statutes and regulations governing racing. After a hearing on the matter, the Commission issued a final order finding that petitioners had, in fact, violated various racing statutes and regulations and suspending their licenses. Petitioners requested judicial review. We affirmed without opinion. *Lee v. Oregon Racing Commission*, 131 Or App 268, 884 P2d 1230 (1994), *rev den* 321 Or 429 (1995).

Shortly before their licenses were to expire, petitioners filed applications for renewal. The Commission did not renew the licenses; instead, it issued notices indicating its intent to refuse the applications for renewal. After a hearing, the Commission issued final orders denying petitioners' applications for renewal of their licenses, revoking any "continuing interest" in such licenses and excluding petitioners from all places under jurisdiction of the Commission. The Commission cited as grounds for its order, among other things, petitioners' prior violations of the racing statutes and regulations, which provided the bases for the suspensions of their licenses.

On review, petitioners raise over a dozen assignments of error. They begin by arguing that the Commission lacks authority to refuse to renew their licenses, because the statutes provide no such authority. According to petitioners, the relevant statutes allow the Commission to approve or

deny an initial application and to revoke or suspend that license on stated grounds. The statute does not, they argue, make any provision for renewal or refusal to renew, unlike other licensing statutes. *E.g.*, ORS 675.745 (Oregon Board of Licensed Professional Counselors and Therapists may "deny, suspend, revoke or refuse to issue or to renew any license issued"); ORS 672.200 (State Board of Engineering Examiners may "refuse to issue, restore or renew, or * * * suspend or revoke a certificate or permit"); ORS 658.445 (Commissioner of Labor and Industries may "revoke, suspend or refuse to renew a license"); ORS 671.404 (State Landscape Architect Board may refuse to renew, suspend or revoke a license). The Commission does not contest that the statute omits any reference to renewal of licenses. It argues only that its authority to refuse to renew flows from its administrative rule that addresses licenses and renewals. OAR 462-31-025(1). The Commission argues that, in any event, any absence of authority to refuse to renew is academic, because its final order also revokes any continuing interest in a license, and it is beyond dispute that the Commission may do that.

■　　　Agencies are "creatures of statutes," and, in the absence of a constitutional provision concerning their function and authority, they derive their authority from:

> " '(1) the enabling legislation that mandates that particular agency's function and grants powers, and (2) from general laws affecting administrative bodies.' "

*City of Klamath Falls v. Environ. Quality Comm.*, 318 Or 532, 545, 870 P2d 825 (1994) (quoting *1000 Friends of Oregon v. LCDC (Clatsop Co.)*, 301 Or 622, 627, 724 P2d 805 (1986)). A statute can confer authority either expressly or by necessary implication. *SAIF v. Wright*, 312 Or 132, 137, 817 P2d 1317 (1991); *Warren v. Marion County et al*, 222 Or 307, 320, 353 P2d 257 (1960) (agency has implied powers as are necessary to carry out the powers expressly granted). An agency may not, by rule, expand its power beyond that provided by statute. *See Severy v. Board of Parole*, 318 Or 172, 176 n 7, 864 P2d 368 (1993); *see also Oregon Occupational Safety v. Don Whitaker Logging*, 123 Or App 498, 500-01, 861 P2d 368 (1993), *rev den* 318 Or 326 (1994).

ORS 462.075(1) provides, in part, that the Commission

"may refuse to license any applicant if it has reasonable ground to believe that the applicant:

"* * * * *

"(c) Does not have, when previously licensed, a good record of compliance with the racing laws of this state * * *.

"* * * * *

"(g) Has been found guilty by the commission of a violation of this chapter or any rules of the commission.

"(h) Should not, in the best interests of the safety, welfare, health, peace and morals of the people of the state, be granted a license."

ORS 462.090(1) also provides, in pertinent part, that the Commission

"may revoke or suspend the license of any licensee upon any of the grounds upon which the commission could refuse to issue a license, as provided in ORS 462.075, or of any licensee who has been convicted by the commission of a violation of this chapter or any rule made pursuant thereto * * *."

Nothing in the statutes relating to the powers of the Commission says anything about renewals of licenses or refusals to renew licenses.

We do not, however, express any opinion on the authority of the Commission to renew or to refuse to renew a license. It is beyond argument that the Commission does have the authority to revoke a license, and, in addition to refusing to renew petitioners' licenses, the Commission did just that.

■ Petitioners do not contest the Commission's authority to revoke licenses, at least not in the abstract. They do challenge the validity of the Commission's revocation of their licenses in this case. In particular, they assert that the Commission erred in basing its revocation decision on the fact that the Commission previously had found them guilty of violating various racing statutes and regulations and on the fact

that petitioners did not have, when previously licensed, a good record of compliance with the Commission's rules. Petitioners argue that, having already been suspended for those violations, they cannot also lose their licenses outright for the same conduct. The Commission argues that nothing in the law prohibits it from predicating a revocation on prior violations or prior failure to maintain a record of good compliance.

We agree with the Commission. Petitioners' arguments are directly at odds with the language of the statute. ORS 462.090 specifically provides that the Commission may revoke or suspend a license on any of the grounds on which it could have refused to issue a license, and among those stated grounds are that the applicant "[d]oes not have, *when previously licensed,* a good record of compliance * * *" and that the applicant *has been found guilty* of violations of racing statutes or rules. ORS 462.075(1)(c), (g) (emphasis supplied). In both cases, the statute clearly refers to prior conduct of an applicant.

Petitioners reply that, even if that is so, the statute permits the Commission to "revoke *or* suspend" on the basis of that past conduct, but it does not permit the Commission to do both. The Commission responds that the language of the statute should not be so narrowly construed. According to the Commission, while the use of the word "or" can signify the disjunctive, it does not necessarily do so; and, from the context of the statute, it is clear that the legislature intended to say that the Commission could either suspend or revoke, or do both.

Again, we agree with the Commission. In ordinary speech, the term "or" may or may not be used to signify alternatives that are mutually exclusive. For example, the sentence "Issuance of a passport permits the traveler to visit France *or* Italy" does not mean that the traveler may visit France or Italy, but not both. Closer to the point, when ORS 462.075(1)(g) says that a license application can be denied because of prior violations "of this chapter *or* any rules of the commission," obviously the application may be denied if an applicant has violated both. (Emphasis supplied.) Such use of the term has been common in legislative enactments for at least several centuries, David Mellinkoff, *The Language of*

*the Law* 148-50 (1963), and has been recognized more recently by Oregon courts. *See, e.g., Ollilo v. Clatskanie P.U.D.*, 170 Or 173, 179-80, 132 P2d 416 (1942) ("and" means "or" when necessary to effectuate the intentions of the legislature); *but see Lairmore v. Drake and Borough*, 185 Or 239, 246, 202 P2d 473 (1949) ("or" can only be disjunctive). The question is in what sense the legislature intended the term to be understood as it is used in ORS 462.090(1). *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). To discern the legislature's intentions we look to the text of the statute in its context and, if necessary, the legislative history and other tools of construction. *Id.* at 610-12.

In this case, there is no indication that the legislature intended the Commission to be limited in its enforcement capabilities to either revocation or suspension, but not both. To begin with, nothing in the phrasing of ORS 462.090(1) suggests that the legislature intended revocation or suspension to be mutually exclusive enforcement options; to the contrary, the language is authorizing in nature, not limiting. Moreover, petitioners' suggestion that revocation and suspension are mutually exclusive does not make much sense. The Commission would be unable to suspend a license pending a hearing to determine whether outright revocation is appropriate. In fact, ORS 462.090(3) expressly provides that, in specified instances, the Commission may immediately suspend a license pending a hearing to determine final action. We conclude that the Commission did not err in revoking petitioners' licenses.

Petitioners' other assignments of error do not warrant discussion.

Affirmed.