Submitted on record and briefs July 23, 1997, reversed and remanded in part; otherwise affirmed January 21, 1998

Darrell E. LEE
and Vicki Lee,
*Appellants,*

*v.*

Woodrow MITCHELL,
John Doe #1, John Doe #2 and M. Bonnett,
*Defendants,*

*and*

The Partnership
MILLER, NASH, WIENER, HAGER & CARLSEN,
John Neupert, William Walters, Dave Brown,
Brian Burton, J. Austin, H.E. "Gene" Ferryman
and Brian Ferryman,
*Respondents.*

(9508-05546; CA A92786)

953 P2d 414

Darrell E. Lee and Vicki B. Lee filed the briefs *pro sese*.

Marjorie A. Speirs, Janet M. Schroer and Hoffman, Hart & Wagner filed the brief for respondents Miller, Nash, Wiener, Hager & Carlsen, John Neupert, William Walters, Dave Brown, J. Austin, and M. Bonnett.

Darleen Darnall, John F. McGrory, Jr. and Davis Wright Tremaine filed the brief for respondents H.E. "Gene" Ferryman and Brian Ferryman.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

This case arises from disputes between the owners of The New Portland Meadows (TNPM), an Oregon corporation that operates a race course in Portland, over the control and operation of the corporation and its business. Plaintiffs jointly own 50 percent of the shares of TNPM,[1] while defendant H.E. "Gene" Ferryman (Gene) owns the other 50 percent. Defendant Brian Ferryman (Brian) is Gene's son. The other defendants involved in this appeal (the attorneys) are a law firm and several lawyers who represented TNPM during the disputes.[2]

This case comes to us from the trial court's grant of ORCP 21 A motions against plaintiffs' pleadings. It first granted Gene's motions under ORCP 21 A(3) (another action pending) to dismiss several of plaintiffs' claims in their amended complaint as to him. Thereafter, it granted a number of motions under ORCP 21 A(8) (failure to state a claim) by Brian and the attorney defendants against various claims in the third amended complaint. When plaintiffs failed to plead further, the court entered a judgment under ORCP 67 B dismissing all of their claims against defendants with prejudice.[3] Plaintiffs appeal; we affirm in part and reverse in part.

We will describe the facts in connection with our discussions of the various assignments of error, taking them from the relevant complaints and the material supporting the motions under ORCP 21 A(3). The underlying factual situation is the breakdown in the relationship between the owners of TNPM, as one result of which Gene and Brian became

---

[1] Plaintiff Darrell Lee is the record owner of the stock. Plaintiffs allege that they are Washington residents and that, under Washington law, plaintiff Vicki Lee, Darrell's wife, has an equal community property interest in the shares. Those allegations do not affect our analysis of the issues on appeal.

[2] References in this opinion to "defendants," without other designation, are to all of the defendants involved in this appeal.

[3] Plaintiffs argue on appeal that the court should not have dismissed their claims with prejudice. They did not object when defendants moved for such a dismissal, and we therefore do not consider this argument.

the sole directors of the corporation, Gene became the president, and plaintiffs lost both control and participation in the corporate business.[4]

In their first assignment of error, plaintiffs assert that the trial court erred in granting Gene's motions to dismiss a number of claims from the amended complaint under ORCP 21 A(3).[5] In support of his motions, Gene relied on the trial court's ORCP 67 B judgment in the Multnomah County case of *Ferryman v. The New Portland Meadows and Lee*, 145 Or App 603, 930 P2d 902 (1997),[6] and on plaintiffs' fourth amended complaint in the Clark County, Washington, case of *Lee and Lee v. Ferryman*, No. 93 2 01095 1. Those documents contain the only information in the record about those cases.

ORCP 21 A(3) authorizes the court to dismiss a claim for relief when "there is another action pending between the same parties for the same cause[.]" The rule replaces the previous plea in abatement on the same ground. *See Smith v. Morris*, 112 Or App 217, 218, 827 P2d 1370 (1992). The parties may present evidence outside the pleadings in support of or opposition to a motion under the rule. We review the trial court's actions for errors of law, first discussing the parties' arguments about the law and then considering the specific claims in issue.[7]

■     The purpose of a plea in abatement for another action pending was to prevent the defendant from being

---

[4] We have previously decided two related cases, *Lee v. Oregon Racing Commission*, 142 Or App 114, 920 P2d 554, *rev den* 324 Or 394 (1996) (affirming Commission's refusal to renew plaintiffs' licenses), and *Ferryman v. The New Portland Meadows and Lee*, 145 Or App 603, 930 P2d 902 (1997) (affirming trial court judgment without opinion).

[5] Plaintiffs refer to the second amended complaint, rather than the amended complaint, in this assignment of error. The trial court never granted leave for plaintiffs to file the second amended complaint, defendants never moved against it, and the order that plaintiffs cite refers to the amended complaint. Gene responds to plaintiffs' arguments on the merits without objecting to the nature of that assignment of error. We will construe plaintiffs' assignment as referring to the amended complaint.

[6] Only Gene Ferryman, not Brian, was a party to this case.

[7] The parties at times incorrectly refer to review for errors of law as "de novo" review. *See Trabosh v. Washington County*, 140 Or App 159, 163 n 6, 915 P2d 1011 (1996).

harassed by the pendency "at the same time of two actions based on the same cause of action, at the instance of the same plaintiff, who has a complete remedy by one of them[.]" 1 CJS 49, Abatement and Revival § 16. The Supreme Court has identified as the essential requirement for abatement on that ground that there be " '[i]dentity of parties, causes of action, issues, and relief[.]' " *Mursener v. Forte et al.*, 186 Or 253, 274, 205 P2d 568 (1949) (emphasis deleted; *quoting* 1 CJS 62, Abatement and Revival § 39).[8] Those statements continue to explain the purpose for ORCP 21 A(3).

Plaintiffs argue both that the requirements for a plea in abatement continue to control an ORCP 21 A(3) motion and that, under those requirements, the claims at issue in this case are not the same as those involved in the other cases.[9] In doing so they insist that "cause of action," as the Supreme Court used the term in *Mursener*, continues to have its traditional meaning, without regard to more recent cases that have greatly expanded that concept for the purposes of claim preclusion. *See Peterson v. Temple*, 323 Or 322, 330-32, 918 P2d 413 (1996) (describing former and current meanings of the term). Gene argues, in contrast, that ORCP 21 A(3) is unrelated to the former plea in abatement and that the court should focus on the broader, more recent, criteria for defining a claim for relief in deciding whether there is another action pending in this case.

We have previously treated a decision on a plea in abatement as good law on the same issue under ORCP 21 A(3). *Smith*, 112 Or App at 218 (applying the rule established in *Owen J. Jones & Son, Inc. v. Gospodinovic*, 46 Or App 101, 610 P2d 1238 (1980)). We see nothing in the text, context, or history of the rule to suggest that the legislature intended it to have a different meaning from the plea that it replaced. We therefore agree with plaintiff to that extent. On the other hand, there has always been a close connection between

---

[8] Our citation to CJS comes from a volume that replaced the one that the Supreme Court quoted in *Mursener v. Forte et al.*, 186 Or 253, 274, 205 P2d 568 (1949), and that is organized in a modified fashion.

[9] The parties raise no issue about whether ORCP 21 A(3) provides for the dismissal of an Oregon case based on claims that are pending in another jurisdiction. For the purposes of this case, we assume that it does.

abatement for another action pending and the claim preclusion doctrines of merger and bar, and that connection supports using the same definition of "cause of action" or "claim for relief" in both contexts.

■ The purposes of claim preclusion are to provide finality to the conclusion of a dispute and to prevent splitting a single dispute into separate controversies. *Drews v. EBI Companies*, 310 Or 134, 141, 795 P2d 531 (1990). It prevents requiring a party to litigate the same claim twice on the merits, either as a plaintiff or a defendant. *Ladd v. General Insurance Co.*, 236 Or 260, 265, 387 P2d 572 (1964); *see also Ditton v. Bowerman*, 117 Or App 483, 486, 844 P2d 919 (1992), *rev den* 316 Or 527 (1993). Claim preclusion thus comes into play *after* the entry of a judgment in the first case. In contrast, dismissal under ORCP 21 A(3) is available *before* judgment in the first case, *if* that judgment would have a preclusive effect on the second case.

■ The purposes of claim preclusion and dismissal for another action pending are thus similar, and determining whether either applies involves similar considerations.[10] The differences in the application of the two concepts arise primarily from when the concepts operate on the second claim, something that generally does not affect determining what constitutes a claim. For these reasons, we hold that "cause of action" in the older abatement cases should be understood as having undergone the same change in meaning that the term has experienced in the more recent claim preclusion cases. There is no reason to give a single phrase different meanings in similar contexts.

■ The heart of the change in claim preclusion principles over the last twenty years, beginning with *Dean v. Exotic Veneers, Inc.*, 271 Or 188, 531 P2d 266 (1975), is to shift the focus from the traditional concept of a "cause of action" that generally derived from the common-law forms of action to the broader concept of a "claim for relief" that derives from more

---

[10] Almost 80 years ago, the Supreme Court noted that, for one action to require the abatement of another, a judgment in the first action must bar a judgment in the second. If it is possible to gain more relief in the second action than in the first, the court cannot abate the second. *Ukase Inv. Co. v. Smith*, 92 Or 337, 345, 181 P 7 (1919).

modern procedural rules. Under current cases, the focus is on the transaction at issue in the plaintiff's claim, with claim preclusion applying to all claims against the defendant that were available to the plaintiff arising from that transaction, whether or not the plaintiff actually asserted them. *Rennie v. Freeway Transport*, 294 Or 319, 324, 656 P2d 919 (1982). A "transaction," for claim preclusion purposes, is a group of facts that entitles the plaintiff to relief, with its precise boundaries determined pragmatically in the particular case, emphasizing considerations of practical trial convenience. *Dean*, 271 Or at 192-94.

■■ One additional consideration is relevant to this case. There are no compulsory counterclaims in Oregon, *Buck v. Mueller*, 221 Or 271, 277, 351 P2d 61 (1960), and as a result claim preclusion does not apply when the plaintiff in the second case failed, *as a defendant* in the first case, to raise the claim. *Burlington Northern v. Lester*, 48 Or App 579, 583, 617 P2d 906 (1980). That rule has two exceptions: (1) if the first case necessarily adjudicated the claim that the plaintiff pleads in the second case, that claim is precluded, *Gwynn v. Wilhelm*, 226 Or 606, 610, 360 P2d 312 (1961), and (2) if the plaintiff in the second case actually asserted a counterclaim or otherwise sought affirmative relief as a defendant in the first case, claim preclusion applies in the same way that it would to a plaintiff filing a claim. *Perkins v. Conradi*, 151 Or App 585, 950 P2d 380 (1997); *Conner v. Delon Oldsmobile Co.*, 66 Or App 394, 397-98, 674 P2d 1180 (1984).

■■ These rules concerning claim preclusion apply to determining whether plaintiffs' claims in this case are subject to dismissal under ORCP 21 A(3) on the ground that plaintiffs should have asserted them in another pending action. If entry of a judgment[11] in the other pending actions would preclude plaintiffs from asserting any claims in this case, the court should dismiss those claims. Because the

---

[11] A pending appeal does not affect the preclusive effect of a judgment. *See Hickey v. Settlemier*, 116 Or App 436, 440, 841 P2d 675 (1992), *aff'd* 318 Or 196, 864 P2d 372 (1993); *Ron Tonkin Gran Turismo v. Wakehouse Motors*, 46 Or App 199, 207, 611 P2d 658, *rev den* 289 Or 373 (1980). Because we conclude that the *Ferryman* case has no effect on plaintiffs' claims against Gene, we do not need to resolve plaintiffs' assertion that, as to that case, Gene confuses a motion under ORCP 21 A(3) with the affirmative defense of claim preclusion. *See* ORCP 19 B.

court dismissed plaintiffs' Third, Fourth, Fifth, Eleventh, and Twelfth claims against Gene under ORCP 21 A(3),[12] we focus on whether the judgment in either of those actions would either merge one of the dismissed claims into the judgment or would bar plaintiffs from bringing the claim at a later time.

In the *Ferryman* case, plaintiff Darrell Lee was a defendant and plaintiff Vicki Lee was not a party. Because, however, she is in privity with Darrell Lee, her rights are determined by our decision about his. *Gaul v. Tourtellotte*, 260 Or 14, 20, 488 P2d 416 (1971). The only document in the record concerning that case is the ORCP 67 B judgment. The judgment denies Darrell Lee's counterclaims for sanctions against plaintiff and TNPM and his separate counterclaim against TNPM. It gives no indication of the subject matter or allegations of those counterclaims. Based on the other parties' claims, the court ordered the dissolution of TNPM and awarded Lee certain amounts that the corporation owed him. The most that we can say is that Lee asserted in the dissolution proceeding that he was entitled to those amounts. By itself, that is insufficient for us to conclude that he asserted any claim in the *Ferryman* case that is also involved in this case.

In the Fourth Claim in this case, plaintiffs allege that Gene engaged in oppressive conduct by failing to release corporate funds as required for plaintiffs to make required quarterly tax payments. Gene points out that the judgment in the *Ferryman* case includes provisions concerning the use of corporate money for tax purposes. The judgment suggests that those provisions relate to *TNPM's* counterclaim and crossclaim for an accounting. We do not have the pleadings in that case before us, so we have no further information about how those provisions relate to the issues in that case. We certainly cannot say that Darrell Lee asserted the same claim in

---

[12] That is what the court's order provides. Plaintiffs argue that the court also dismissed the Second Claim, because it verbally told them to delete all claims against Gene. However, the court's written order controls. *See Conley and Conley*, 97 Or App 134, 137, 776 P2d 860 (1989) (statement from bench is not order until it appears in written order). Plaintiffs do not assert that Gene failed to give them an opportunity to object to the draft order before he submitted it to the court. *See* UTCR 5.100.

the *Ferryman* case that plaintiffs assert in the Fourth Claim in this case.

In the Fifth Claim in this case, plaintiffs allege that Gene had TNPM pay excessive salaries to Brian and himself. The judgment in the *Ferryman* case provided for a payment of a salary to Gene of $70,000 a year, retroactive to January 1, 1994, and found that that amount was reasonable. That provision, again, was part of the resolution of *TNPM's* counterclaim and crossclaim. Without the pleadings, we cannot tell whether it was related to any of Darrell Lee's counterclaims or whether it necessarily decided the issue that plaintiffs raise in this case. Although the judgment in *Ferryman* may create issue preclusion, it does not provide a ground for dismissing any of plaintiff's claims in this case. Gene does not assert that the *Lee and Lee* case has any effect on the Fourth and Fifth Claims. The court erred in dismissing those claims against Gene.

*Lee and Lee* is an action by plaintiffs to enforce various provisions of the shareholders' and stock purchase agreements between Darrell Lee and Gene concerning TNPM. In their fourth amended complaint in that case, plaintiffs allege that Gene violated the agreements by having Darrell Lee removed as president, by various actions that resulted in Gene becoming president and Brian a director of TNPM, and by taking a number of unreasonable actions that cost the corporation large amounts of money. They allege that those actions directly injured them. As relevant to this case, the relief that plaintiffs sought was to nullify the changes in corporate governance, for judgment for their losses from Gene's unreasonable actions, to require Gene to sell his shares to plaintiffs, and to require Gene to withdraw the *Ferryman* case. We compare plaintiffs' claims in that case to those in this case.[13]

In the Third Claim, plaintiffs alleged that Gene violated his fiduciary duties by using corporate funds to pay the attorneys for his personal representation in gaining control of

---

[13] In the third amended complaint, plaintiffs removed all references to Gene from the Second Claim, even though there was no effective order requiring them to do so. There is thus nothing to which they could have assigned error, or for us to review, concerning the Second Claim as to Gene.

the corporation. In the *Lee and Lee* case, plaintiffs alleged that Gene acted unreasonably by, among other things, using attorneys to represent himself directly and to assist in gaining control of the corporation. They seek damages from Gene for that alleged misconduct. Plaintiffs argue that the actions involved in the *Lee and Lee* case relate to a different time from the actions in this case. However, so far as the pleadings show, the same evidence could be presented in each case to support the allegations. The trial court correctly dismissed the Third Claim against Gene under ORCP 21 A(3).

■ In the Eleventh Claim, plaintiffs allege that Gene and the attorneys conducted the December 1994 stockholders' meeting in a way that deprived them of their right to cast their votes to elect one of the two members of the board of directors. In the Twelfth Claim, they allege that, while Darrell Lee was president and Gene was treasurer of TNPM, Gene moved $165,000 to an account to which only he had access and that that action began a series of events that culminated in Darrell Lee's loss of his racing license and removal from his position as president and a director of TNPM. Gene argues that those allegations constitute plaintiffs' version of the breakdown in relationships between plaintiffs and Gene, that that entire breakdown constitutes a single "claim," and that plaintiffs have raised other aspects of that claim in the *Lee and Lee* case.

Gene's view of what constitutes a claim is too broad. The holdings of the cases that we have previously discussed do not support it. It is one thing to say, as in *Dean*, that a claim for breach of contract encompasses a claim for *quantum meruit* based on the same events, or that, as in *Peterson*, property damage is part of the same claim as personal injuries arising from the same accident, or that, as in *Rennie*, an action for securities violations is part of the same claim as an action for common-law fraud arising from the same transaction.[14] Those cases involved a discrete set of facts that gave

---

[14] Gene also relies on *Holmes v. Anthony*, 56 Or App 666, 643 P2d 372, *rev den* 293 Or 235 (1982), in which we held that an action attacking an arbitration provision in a contract was part of the same claim as a previous decision enforcing that provision. That case, like the others, involved a focused dispute that was tied to a discrete and limited factual situation.

rise to claims under a number of legal theories. They fit the common conception of what constitutes one "transaction."

Gene's contention is apparently that the Eleventh and Twelfth Claims should be treated as part of the same transaction as the claims in *Lee and Lee* because all of the claims concern the same connected series of transactions. The Supreme Court has discussed the criteria for determining whether a number of events are so connected that they constitute the same transaction for claim preclusion purposes in two cases, *Whitaker v. Bank of Newport*, 313 Or 450, 836 P2d 695 (1992) and *Troutman v. Erlandson*, 287 Or 187, 598 P2d 1211 (1979). It holds that whether a grouping of events constitutes such a "series" is to be determined pragmatically, giving weight to considerations that include time, space, origin, motivation, the similarity of the acts, whether the events form a convenient trial unit, and whether treatment as a unit conforms to the parties' expectations and business usages. *Whitaker*, 313 Or at 455.

In *Whitaker*, the plaintiffs in the first case sought to enforce a contract by which the defendants were to make cash advances to finance construction of the plaintiffs' building. The parties settled that case. The plaintiffs thereafter brought the second case, seeking damages from the same defendants and the bank for an alleged conspiracy to vary the terms of the same agreement. In holding that the two cases involved the same claim and that the second case was, therefore, precluded as to the original defendants, the court emphasized the closeness in time and space of the acts involved in the two cases, the similarity of the harm that the plaintiffs suffered and of the defendants' alleged motivation, and that the two cases would have formed a manageable trial unit. *Id.* at 456-59. In *Troutman*, the plaintiff first brought an action to dissolve a partnership with the defendant and for an accounting. In the second case, he sought damages for the defendant's alleged misrepresentations during the course of the partnership that deprived the plaintiff of partnership property. The Supreme Court held that the fraud claim was part of the same claim as the partnership dissolution because that proceeding involved adjusting all aspects of the financial relations of the parties. *Troutman*, 287 Or at 207.

Neither *Whitaker* nor *Troutman* involved as broad a series of facts, extending over as great a period of time, as are involved in this case. However, the issues that plaintiffs raised in the *Lee and Lee* case implicate so many aspects of the parties' relationships, and the allegations of the Eleventh Claim fit so directly into the events involved in *Lee and Lee*, that the court correctly dismissed that claim as to Gene. The allegations in *Lee and Lee* relate to two agreements between the stockholders and to Gene's alleged breach of those agreements by procuring Darrell Lee's removal from corporate office at the 1993 stockholder's meeting and by failing to nominate Darrell for those offices at the 1995 meeting. In addition, plaintiffs allege that, after taking control of TNPM, Gene and Brian acted unreasonably in a number of ways that damaged the corporation. They sought specific performance of the agreement and damages for the unreasonable actions that they specifically identified.

In the Eleventh Claim, plaintiffs allege that Gene violated his fiduciary duty at the *1994* stockholder's meeting by conducting it in such a way as to prevent them from electing one of the two directors. Because plaintiffs brought *both* the 1993 *and* 1995 meetings into question in the *Lee and Lee* case, the 1994 meeting is within the time period of their claim in that case. The Eleventh Claim concerns the same kind of factual issues, the same alleged motivation, and the same source of harm that are involved in *Lee and Lee*. Plaintiffs did not attempt to state separate claims in that case, so we treat all of their allegations as part of a single claim for breach of the agreement. Given the breadth of that single claim, additional allegations concerning the 1994 meeting would not produce any significant inconvenience in preparing and trying the case.

██ Those considerations show, however, that the Twelfth Claim is not part of the same claim as *Lee and Lee*. The allegations in that claim concern events that occurred *before* Darrell Lee lost his positions as president and director of TNPM and thus are not necessarily related to the claim in *Lee and Lee*. Gene's alleged misconduct involved a separate breach of his fiduciary duties to TNPM and plaintiffs from the contractual breaches involved in that case. Showing the

harm that his alleged hiding of the $165,000 caused might involve some of the same evidence as in the other case, but the heart of the claim is different. Unlike the partnership dissolution proceeding in *Troutman*, *Lee and Lee* does not by its very nature bring the entire business relationship of the parties into issue. Unlike *Whitaker*, the facts of the Twelfth Claim do not involve a series of events that are close in time and that concern the same breach of the same contract as the allegations in *Lee and Lee*. The trial court erred in dismissing the Twelfth Claim against Gene under ORCP 21 A(3).

■ In their third, fifth, sixth, seventh, and eighth assignments of error,[15] plaintiffs assert that the court erroneously dismissed their Third, Fourth, and Fifth Claims against Brian[16] and their Second, Third, Sixth, and Seventh Claims against the attorneys, on the ground that plaintiffs could not assert the claims directly but had to bring them derivatively, on behalf of the corporation. In the Second Claim, plaintiffs allege that they are entitled to damages for defendants' wrongful failure to provide certain corporate information. In the Third Claim, plaintiffs allege that defendants breached fiduciary duties to plaintiffs by spending and receiving corporate funds to assist the Ferrymans in taking control of TNPM. In the Fourth Claim, plaintiffs allege that Brian breached his fiduciary duties to plaintiffs by refusing to disburse funds necessary for plaintiffs' quarterly state and federal tax payments. In the Fifth Claim, plaintiffs allege that Brian breached his fiduciary duties to plaintiffs by paying Gene and himself excessive salaries. In the Sixth and Seventh Claims, plaintiffs allege that the attorneys breached fiduciary duties to them by charging TNPM excessive fees (Sixth Claim) and by violating various ethical rules (Seventh Claim).

■ Plaintiffs' allegations in the Third, Fifth, Sixth, and Seventh Claims, if true, might well give TNPM claims

---

[15] All of the remaining assignments of error relate to the third amended complaint.

[16] In the third amended complaint, plaintiffs allege that Gene did certain things but do not assert any claims against him. On remand, plaintiffs may replead the claims against Gene that the trial court erroneously dismissed from the amended complaint, subject to defendants' right to move against them in the normal fashion.

against defendants for the damages that the corporation suffered.[17] However, the only remedy that plaintiffs seek are damages that, when analyzed, are essentially the loss in the value of their interest in the corporation. They therefore run up against the fundamental rule that "a stockholder has no personal right of action against a third party for a wrong to the corporation which lowers the value of the stock." *Weiss v. Northwest Accept. Corp.*, 274 Or 343, 348, 546 P2d 1065 (1976). Plaintiffs must bring themselves within one of the limited exceptions to that rule in order to bring these claims directly. The exceptions that are relevant to this case are that a plaintiff may bring a direct action when the defendant's actions violate a duty owed to the plaintiff as an individual or when the plaintiff suffers harm distinct from the harm to the corporation. *Id.*; *Wulf v. Mackey*, 135 Or App 655, 660, 899 P2d 755, *rev den* 322 Or 168 (1995). Plaintiffs argue that they have alleged that defendants violated fiduciary duties that they owed directly to plaintiffs. We first consider their arguments concerning Brian.

Plaintiffs sued Brian in his capacity as a director of TNPM. The general rule is that "those in control of corporate affairs have fiduciary duties of good faith and fair dealing toward the minority shareholders." *Zidell v. Zidell, Inc.*, 277 Or 413, 418, 560 P2d 1086 (1977). In *Chiles v. Robertson*, 94 Or App 604, 620-21, 767 P2d 903, *on recons* 96 Or App 658, 774 P2d 500, *rev den* 308 Or 592 (1989), we held that American Law Institute, *Principles of Corporate Governance* § 5.04 (Tent Draft No 5, 1986), states some of the requirements for measuring a director's fiduciary duties.[18] We treated a violation of those provisions as creating a direct claim against the director. Section 5.04 provides, among other things, that a director may not advance his or her pecuniary interest in a

---

[17] We discuss the Second and Fourth Claims separately.

[18] Because the issues concerning Gene are not presently before us, we do not consider the duties of a dominating shareholder or whether they apply to Gene. *See* American Law Institute, *Principles of Corporate Governance*, § 5.11 (Tent Draft No 5, 1986), *cited in Chiles v. Robertson*, 94 Or App 604, 620-21, 767 P2d 903, *on recons* 96 Or App 658, 774 P2d 500, *rev den* 308 Or 592 (1989). On the duties of an equal owner of a close corporation, *see Delaney v. Georgia-Pacific Corp.*, 278 Or 305, 311, 564 P2d 277 (1978).

manner that "causes reasonably foreseeable harm to the corporation *or any of its shareholders in their capacity as shareholders*[.]" (Emphasis supplied.)

Under these principles, a director has duties directly to a shareholder that are independent of the director's duties to the corporation. The question, thus, is whether plaintiffs have alleged that Brian violated any of those duties. In the Third Claim, plaintiffs allege that Brian authorized the use of corporate funds to pay for providing Gene legal representation in his attempts to force plaintiffs to sell their shares to him, to gain and maintain control of TNPM's board of directors, and for other personal reasons. They rely in part on cases that hold that it is improper to use corporate money to finance one side of a shareholder dispute. *See, e.g., Wickersham v. Crittenden*, 106 Cal 329, 39 P 603 (1895); *Chabot & Richard Co. v. Chabot*, 109 Me 403, 84 A 892 (1912). As Brian points out, however, in those cases the courts required the defendants to repay the money to the corporation, not to the complaining shareholder.

We have held that

"[w]hen the majority shareholders of a closely held corporation use their control over the corporation to their own advantage and exclude the minority from the benefits of participating in the corporation, absent [*sic*] a legitimate business purpose, the actions constitute a breach of their fiduciary duties of loyalty, good faith and fair dealing." *Noakes v. Schoenborn*, 116 Or App 464, 472, 841 P2d 682.

According to plaintiffs' allegations, Brian, as a director, participated in a plan by which an equal shareholder used corporate funds for the purpose of obtaining control of the corporation. It is reasonably foreseeable that that action would cause harm to plaintiffs in their status as shareholders. Brian does not assert on appeal that his alleged actions did not further his pecuniary interest, *see Principles of Corporate Governance* § 5.04, and we therefore do not need to decide whether such a benefit to a director is always necessary to a direct action by a shareholder.

In *Noakes*, as in most similar cases, we discussed the rights of a minority shareholder. As Brian points out, plaintiffs are equal shareholders with Gene. Therefore, he argues,

Gene did not have a fiduciary duty toward plaintiffs. However, in *Delaney v. Georgia-Pacific Corp.*, 278 Or 305, 311, 564 P2d 277 (1977), the Supreme Court held that the "equal owners of a close corporation" are each "entitled to the other's performance of fiduciary duties of loyalty, good faith, and full disclosure."[19] In addition, a director has the same duty towards all shareholders, without regard to their percentages of ownership. We conclude that plaintiffs could show that Brian breached his fiduciary duty to them. The court erred in dismissing the Third Claim as to him.

■ In the Fifth Claim, plaintiffs allege that Brian and Gene used their control over the corporation to pay themselves excessive salaries. They seek damages equal to their share of the excess. Nothing about that claim involves a duty that Brian owed to plaintiffs directly rather than his duties to TNPM. This is an exclusively derivative claim.[20]

■ In the Fourth Claim, plaintiffs allege that Brian and Gene damaged them by failing to provide corporate funds to pay tax liabilities that they incurred. They do not explain the details in the complaint, but in argument they assert that TNPM is a Subchapter S corporation and that it reported a profit, thus creating a tax liability for its shareholders. Because they did not plead those facts, we do not consider them. However, the allegations that they did make in support of this claim would not create any claim on the corporation's behalf, because they do not show that Brian's actions caused any harm to the corporation. Indeed, those allegations tend to support a claim *against* the corporation rather than a claim on its behalf. Thus, in contrast to the Third and

---

[19] Brian relies on our statement in *Wilcox v. Stiles*, 127 Or App 671, 680, 873 P2d 1102, *rev den* 320 Or 360 (1994), that the defendant, who was an equal shareholder, did not state a direct claim for breach of contract, in part because he was not a minority shareholder. Nothing about the claim at issue in *Wilcox* involved a breach of a fiduciary duty that the plaintiff, the other equal shareholder, owed to the defendant. Thus our statement was not necessary to our holding.

[20] On appeal, plaintiffs, citing American Law Institute, *Principles of Corporate Governance* § 7.01(d) (1994), argue that we should exercise our discretion to allow them to proceed directly even if the claims are otherwise derivative. They did not make that argument to the trial court, and we do not consider it. For the same reason, we do not consider their suggestion that we permit them on remand to amend their complaint to allege derivative claims.

Fifth Claims, the Fourth Claim is not a claim that the corporation could bring. As a necessary consequence, it is also not a claim that plaintiffs must assert derivatively. The trial court erred in dismissing this claim on that ground. There are no other issues on appeal relating to it.

■ We turn to plaintiffs' Second, Third, Sixth, and Seventh Claims against the attorneys. In order to bring those claims as direct claims, plaintiffs must allege some ground under which the attorneys owed them a duty separate from the duties that they owed the corporation as its attorneys. Plaintiffs suggest two grounds for such a duty: (1) that the attorneys had direct fiduciary duties to them, and (2) that they were third-party beneficiaries of the contract between the attorneys and TNPM. The foundation for both of those arguments is plaintiffs' assertion that 50 percent shareholders of a close corporation are actually partners. The result, they argue, is that the corporate attorneys owe the quasi-partners individually the same fiduciary duties that they owe the quasi-partnership as a unit and that the quasi-partners are third-party beneficiaries of the contract between the attorneys and the quasi-partnership.

The sole Oregon authority on which plaintiffs rely to support this argument is *Delaney*, in which the two 50 percent participants in a continuing joint venture incorporated the venture solely for the purpose of dealing with the outside world. The Supreme Court held, *in that specific context*, that it was possible to consider the corporation as organized to carry out the purposes of the continuing joint venture. 278 Or at 310-11. The purpose for that comment, however, was to explain one ground for the court's holding that the parties continued to have fiduciary duties to each other after the incorporation. Nothing about the court's statement suggests either that it intended to state a general rule that all such corporations should be treated as partnerships or that it intended its statement to relate to the duties of third parties to the owners of the corporation as individuals.

■ The basic problem with plaintiffs' argument is that a corporation is a legal entity separate from its shareholders, directors, and officers. *Willamette Lbr. Co. v. Cir. Ct., Mult. Co.*, 187 Or 591, 603, 211 P2d 994 (1949). As a result, an

attorney who represents a corporation "owes a duty of loyalty to the corporation and not to its officers, directors and shareholders in their personal capacity." *Granewich v. Harding*, 150 Or App 34, 37, 945 P2d 1067 (1997). "The corporation usually is considered an entity and the attorney's duty of loyalty is to the corporation and not to its officers, directors or any particular group of stockholders." *In re Banks*, 283 Or 459, 469, 584 P2d 284 (1978). Thus, the mere existence of an attorney-client relationship between a corporation and an attorney does not in itself create an attorney-client relationship—or any other basis for fiduciary duties—between the attorney and a corporate stockholder. Although plaintiffs cite cases that hold that a corporate attorney also represented an individual shareholder, those cases are based on circumstances beyond the mere representation of the corporation. Plaintiffs do not allege any such facts in this case.

Even assuming that plaintiffs have pled that they are third-party beneficiaries of the contract between TNPM and the attorneys, and that plaintiffs made that argument at the trial court, plaintiffs' third-party beneficiary arguments fail for the same reasons that their argument that the corporation is really a partnership fails. The mere fact that plaintiffs own half of the stock of the corporation does not mean that those who deal with the corporation intend to benefit plaintiffs as individuals; TNPM is a separate entity from its owners. The trial court correctly dismissed the Second, Third, Sixth, Seventh, and Eleventh Claims as to the attorneys.

In their second assignment of error, plaintiffs attack the trial court's dismissal of the Second Claim, in which plaintiffs seek damages for Brian's refusal to give them access to certain corporate information in addition to the information that ORS 60.774 requires TNPM to provide. The basic problem with this claim is that plaintiffs have not adequately alleged how any denial of information damaged them. They allege that they need the withheld information

"so that they can protect their investment and interest in TNPM; [to] assist them in determining if they should sell, compromise or invest further in the business; [to] alert them to fraud and mismanagement which might be correctable; and [to] protect their investment through communications with the corporate staff."

They then allege that they believe that discovery will show that Gene and Brian engaged in a number of improper actions that caused damages to TNPM and that plaintiffs could have prevented those actions if they had had the withheld information.

Plaintiffs do not allege that Gene and Brian engaged in misconduct; rather, they allege that discovery will show that they did. They do not allege that the corporation suffered any damages; rather, they allege that discovery will show that the corporation did.[21] They allege that they could have prevented those hypothetical damages if they had had the information, but they do not allege any facts showing how they could have done so. They do not allege any specific facts that Gene and Brian failed to disclose or how plaintiffs could have used those facts to prevent harm to the corporation. Plaintiffs do not show any causal connection between the damages that they claim and the failure to disclose. Their real complaint is that Gene and Brian committed acts that damaged the corporation, not that they failed to provide information to plaintiffs. Plaintiffs have not shown that the alleged failure to disclose is the basis for an independent claim.[22]

Plaintiffs' ninth and tenth assignments of error concern their Ninth and Tenth claims, which arise from the attorneys' actions in obtaining an order requiring plaintiff Darrell Lee to show cause why he should not be held in contempt. Plaintiffs allege that the attorneys did so for improper purposes that included retaliating for plaintiffs' adding them to this case as defendants, depriving plaintiffs of their equal control of TNPM, and squeezing plaintiffs out of the corporation. In the Ninth Claim plaintiffs assert that those actions constituted abuse of process; in the Tenth claim they assert that they constituted the wrongful initiation of civil proceedings. The court dismissed both claims under ORCP 21 A(8) for failure to state a claim.

---

[21] We do not consider plaintiffs' allegations that they suffered emotional distress and frustration, as those damages are not recoverable in this context.

[22] Plaintiffs also seek an injunction against Brian and the attorneys enjoining them from interfering with plaintiffs' right to disclosure and requiring them to disclose all information concerning TNPM's business affairs. Based on plaintiffs' allegations, that is a claim that they should make against the corporation.

We first consider the claim for abuse of process. In *Reynolds v. Givens*, 72 Or App 248, 695 P2d 946 (1985), we held that it is necessary to allege either an actual arrest or a seizure of property in order to state such claim. Plaintiffs did not allege either of those facts in their Ninth Claim. They strenuously argue that our holding in *Reynolds* was based on a misunderstanding of the Illinois case on which we relied and was otherwise wrong. Plaintiffs are correct that there is a split of authority on this point. *See* 72 CJS 697, Process § 108. In *Reynolds*, we adopted one of the competing positions, and we see no reason to change our opinion at this time. The trial court correctly dismissed plaintiffs' Ninth Claim.

■ The only argument that the attorneys make to support the dismissal of plaintiffs' Tenth Claim is that plaintiffs have not adequately pled an entitlement to damages. In that claim, plaintiffs' only allegation of actual damage is that the attorneys' actions caused Darrell Lee to suffer emotional distress and that he is therefore entitled to general damages. The attorneys assert that that allegation is insufficient to state a claim for wrongful initiation of civil proceedings. In *O'Toole v. Franklin*, 279 Or 513, 569 P2d 561 (1977), the Supreme Court reaffirmed Oregon's adherence to the "English rule," under which an element of that tort is that the plaintiff suffered special injury in addition to the trouble, cost, and other consequences of defending against unfounded legal charges. The legislature thereafter adopted ORS 30.895(1), which provides:

> "In order to bring a claim for wrongful use of a civil proceeding against another, a person shall not be required to plead or prove special injury beyond the expense and any other consequences normally associated with defending against unfounded legal claims."

That statute effectively overrules *O'Toole*. However, the attorneys assert that, while the statute makes it clear that special injury[23] is not required, plaintiffs must still allege at

---

[23] In their brief, the attorneys appear to equate "special injury" with "special damages." "Special injury" in this context may or may not be related to "special damages."

least the expense of litigation. We hold that an allegation of emotional distress is sufficient.

■■ ■ Wrongful initiation of a civil proceeding is the civil counterpart of a malicious prosecution action. *Erlandson v. Pullen*, 45 Or App 467, 470, 608 P2d 1169 (1980). Injury that a malicious prosecution causes to the plaintiff's feelings is an element of damages in a malicious prosecution action. *Hryciuk v. Robinson*, 213 Or 542, 566, 326 P2d 424 (1958). Thus, emotional distress is necessarily an element of damages in an action for wrongful initiation of a civil proceeding. It is a consequence of defending against an unfounded legal claim that is independent of the financial expense that the defense entails. Because it is an independent basis for damages, it is, in itself, sufficient to support the damages element of a claim. The trial court therefore erred by dismissing plaintiffs' Tenth Claim.

Plaintiffs' other arguments do not require discussion.

Dismissal of Fourth, Fifth, and Twelfth Claims against defendant H.E. Ferryman in amended complaint reversed and remanded; dismissal of Third and Fourth Claims against Brian Ferryman and of Tenth Claim against all named defendants in third amended complaint reversed and remanded; otherwise affirmed.