In the Guardianship of Myrtel P. Storms,
an incompetent.

STORMS, *Appellant - Cross-Respondent,*

*v.*

SCHILLING, *Respondent - Cross-Appellant.*

(No. 25767, CA 4816)

548 P2d 529

*Norma Paulus,* Salem, argued the cause for appellant—cross-respondent. On the briefs were Clark, Marsh & Lindauer and Malcolm F. Marsh, Salem.

*T. W. Churchill,* Salem, argued the cause for respondent—cross-appellant. With him on the brief was W. W. McKinney, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

**LANGTRY, J.**

This appeal is by the ward from an order of the circuit court in a guardianship proceeding which approved the guardian's final accounting, charged expenses of a certified public accountant to the estate, denied compensation for the guardian and his attorney fees and required the delivery of remaining assets in possession of the guardian to the ward and exonerated the surety. The guardian cross-appealed from the part of the order which denied him compensation and attorney fees.

On November 1, 1971 the ward, who was operating her women's apparel shop in Newport, fell down a flight of stairs in the shop and suffered severe injuries which resulted in her total incapacity for about nine months. The guardian is her nephew and works in Salem. He apparently was the only relative available and was called to a Salem hospital when the ward was taken there. This resulted in his authorizing treatment of the ward and his going at that time to Newport and taking over the operation of the shop. On December 1, 1971 he petitioned for and received appointment by the Marion County Circuit Court as guardian of the person and of the estate. He made no inventory of the estate, including the stock of merchandise in the store, until January 8, 1972. He never filed that inventory. In the interval he had conducted through the employes of the store extensive sales of the stock of merchandise. Only cash in, some sales slips and cash out records were kept.

The guardian filed a final accounting on October 25, 1973, 14 months after the ward had resumed operating the shop, and after she had petitioned for his removal. The ward made objections to the final accounting on the grounds that the guardian had failed to "protect, preserve and manage" the estate as required by ORS 126.225. (All of the applicable statutes mentioned herein were then in effect, but were repealed by Oregon Laws 1973, ch 823, § 154, which

[ 211 ]

substituted a new guardianship Act for the repealed statutes. A 1975 Act specifically provides that the previous law applies in a situation like this. *See* Oregon Laws 1975, ch 245, § 1.) Other grounds were that he had failed to file the required opening inventory, ORS 126.230; that he had failed to comply with ORS 126.255 by securing "prior approval of the Court" to continue the business; that he had failed to comply with ORS 126.270 in that he had not collected all moneys due the ward and did not file medical insurance claims on her behalf; and that he had failed to comply with ORS 126.336 in that he had failed to file a closing inventory. Numerous other objections based upon statutes were also made but for the purpose of this opinion it is unnecessary to outline them. In this appeal the ward by brief is demanding that the guardian be required to file the inventories which he failed to file and that, if the court believes it is impossible to reconstruct them, it should award ward $15,000 which she estimated in her testimony was the amount of her damages attributable to the guardian's dereliction of statutory duties. The guardian has the burden of sustaining his accounting. *Security Inv. Co. v. Miller,* 189 Or 246, 218 P2d 966 (1950); *Young v. Lee,* 132 Or 1, 271 P 994, 279 P 850, 280 P 342 (1929).

The ward recovered and took over operation of the shop in August 1972. She testified she "never saw him [the guardian]" thereafter. She did not then have access to the bank accounts the guardian had opened. He testified that he had nothing more to do with the shop after late June 1972; that "* * * I got the inference that I would not be too welcome." "* * * I assumed that this was just kind of a family affair * * *."

A certified public accountant was appointed after the objections were made to try to make an acceptable accounting out of the available records. He testified that it would take "hours and hours of time [to reconstruct an inventory] * * * and the results could be challenged in that there would be so many assump-

tions made by the persons working from these different figures * * *." He said that it would take a bookkeeper probably 120 hours to reconstruct an inventory and "* * * After all of that trouble, what sort of a result would you get? You would have quite a few different results." His estimate of the cost of a reconstructed inventory is very loose but it appears that it would be upwards of $1,200. Thus, it appears that it is problematical whether anything can be gained now by ordering a reconstructed inventory. Nevertheless, the evidence tells us that there was a previous inventory and a simple method for taking an inventory did exist. Mrs. Pykonen, a Newport accountant who previously did work for the ward, testified that her former employer, Mr. Grimstead of Newport,

"* * * had all of the records on all of the inventories for every year that she has been in business * * *.

"* * * * *

"A That is an item by item count of the merchandise in the store, taken by the employees of the store at the end of each year. That is a physical count of everything in the store.

"Q You say that Mr. Grimstead has that?

"A Oh, yes."

It was close to the end of the year when the guardian took over this business and proceeded to run it without proper authority or taking an inventory. It would have been a simple matter for him to use the employes of the store and to have made an inventory with the previously existing inventories as a reference. He waited until after he had run extensive storewide clearance sales which have been seriously questioned. Witnesses testified to dresses worth $40 or $50 having been sold for $5 to $10. The probabilities of dereliction in the duty to "protect, preserve and manage" the estate and the failure to file *any* inventory prescribed by law impel us to the conclusion that the guardian, or his surety, before there can be a discharge in this matter must undertake to reconstruct an opening inventory at his own expense. Under the law applicable then, opening and closing inventories were absolutely required;

under the new guardianship Act (*see* present ORS 126.277) an opening inventory is absolutely required. Our ruling in this regard, by its nature, must be subject to further review by the trial court. We also believe that serious effort at making a closing inventory must be attempted before there can be an approval of the final accounting.

■ The trial court in its memorandum opinion noted that "[h]ad it not been for the guardian's efforts there would perhaps have been no business surviving upon her [the ward's] recovery from her injury." This may be true. However, if the supervision of the court and acceptable business practices, both required by applicable law, had been complied with, it is apparent the present confused conditions would not exist. We are satisfied from the record that the guardian did put in a lot of time and effort in keeping the business going and we agree with the trial court that there is no evidence of dishonesty or intentional misappropriation of funds. This may mitigate, but it does not excuse the extensive violations of statutory duties which occurred. The circuit court's order approving the accounting and exonerating the surety must be reversed and the matter remanded for further proceedings involving the reconstructing of inventories (or some acceptable substitute) and the making of an acceptable accounting.

It is probable that further consideration will dictate that no reasonable results can be obtained through the reconstruction of inventories, or substitutes. In that event the ward may be entitled to damages against the guardian in an appropriate proceeding if she can prove them. Her request in briefs for an assessment of $15,000 in damages at this point is not supported by competent evidence. Our reversal of the order made by the court includes all portions thereof, because the guardian's burden of proof as to the final accounting is held not to have been sustained.

Reversed and remanded for further proceedings consistent with this opinion.