Argued July 25, affirmed in part; reversed in part December 26, 1978,
reconsideration denied January 23, review denied February 21, 1979

In the Matter of the Guardianship and Conservator-
ship of Lillian C. Willbanks, an incapacitated person.
WILLBANKS, *Appellant,*
*v.*
MARS, *Respondent.*
(No. 19129, CA 8881)

588 P2d 118

Paul D. Schultz, Oregon City, argued the cause for appellant. With him on the brief was Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City.

Ferris F. Booth, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

**RICHARDSON, J.**

This appeal is from an order overruling objections filed by the ward to the final accounting of the conservator. By her objections, which are set out below in six categories, the ward sought to have conservator surcharged for certain challenged expenditures made from the assets of the ward's estate.

The conservatorship was created on May 30, 1975. The ward was 80 years of age and due to a series of surgeries was incapacitated and unable to care for herself or manage her affairs. The estate consisted of a 47 acre farm, which contained the ward's residence, thirteen residential rental properties, seven secured mortgages and land sales contracts, and seven bank accounts. During the period of the conservatorship, conservator, her husband, and their three teenage daughters undertook to care for all of the ward's needs. Conservator had never before served as a fiduciary and was not skilled in accounting or finance.

Shortly after her appointment, conservator instigated a renovation of the farm to accommodate the raising of registered breeding cattle. The farm had been used for pasturing cattle several years earlier but had since become unsuited for such an enterprise and was used only for the growing of hay. In order to raise cattle on this land, conservator greatly expanded the barn and repaired and installed fences and gates. These repairs were billed to the estate in the amount of $8,463.19. After adapting the farm for breeding cattle, the conservator purchased livestock for $4,500 and expended another $3,522.11 on their care and feeding.

In the early summer of 1975, conservator harvested the hay crop on the farm, but because of rain much of the crop was spoiled. What could be salvaged was baled and used as cattle feed. The harvest expenses totaled $1,179.[1]

---

[1]The expense was $1,354 but at trial the court subtracted $175 for a hay elevator which the conservator sold to the estate.

During the course of her serving as conservator, Mrs. Mars paid to herself, her husband and three daughters gifts totaling $900, which she claims in her final account. She also paid her daughters for the work they performed for the ward. In addition she requested that she be paid $5,460 for her services as conservator. A camera and an adding machine were purchased with estate funds to aid the conservator in her duties.

The ward filed a petition to terminate the conservatorship on May 17, 1976, and it was dissolved August 2, 1976. Conservator filed her final report October 7, 1976, to which the ward filed a lengthy and detailed objection on November 9, 1976.

The ward's objections to the accounting can be grouped into six categories for ease of discussion.

1. Cash expenditures for daily living expenses and cash allowances to the ward.

■ The trial court upheld the challenged cash expenses listed in conservator's final accounting by "giving to LaVonne Mars the benefit of the doubt whenever possible." The trial court was in error as to the applicable law. It is well settled that a conservator is a fiduciary, *Ohio Cas. Ins. Co. v. Mallison et ux,* 223 Or 406, 411, 354 P2d 800 (1960), and as such has a duty to accurately account for expenditures of funds entrusted to her, *Storms v. Schilling,* 25 Or App 209, 213, 548 P2d 529 (1976).

■ After having reviewed the record at length and matched the exhibits to the challenged disbursements we conclude that $722.71[2] of the cash expenses were inadequately verified or were not supported at all and should have been denied. *Roach's Estate,* 50 Or 179, 191, 92 P 118 (1907). In so doing, we recognize that the

[2]It would serve no useful purpose to consider here the challenged account item by item. The ward's attack on the accounting in some measure appears to be motivated by a desire to find fault rather than a concern for proper or improper expenditures; for example, several expenditures are challenged on the sole basis that the receipt for the expenditure totals one cent less than the amount claimed.

accounting and verification was made more difficult by the ward's demand that many of her bills be paid in cash. For those items no cancelled voucher could be produced for verification, but that does not relieve conservator of the burden to support the expenditures.

■ The cash allowances to the ward are also challenged. It is clear that conservator did not obtain receipts for the advancements although it would have been to her benefit to have done so. Receipts may be difficult to secure in the quagmire of a family-fiduciary setting but in order to adequately substantiate such claims it most often will be necessary. Family relationships cannot excuse fiduciary's duty to account for the estate's assets. *See e.g. Storms v. Schilling, supra.*

■ However, the ward admitted receiving at least two of the allowances and did not deny the others. Further, she augmented the problem by intercepting some of the rental property cash receipts before they could be collected by the conservator. Conservator considered any of the intercepted rental money as a cash allowance to the ward for the month she received them. Because of her interference with conservator's duties, the ward is estopped to assert the inadequacy of the receipts for these allowances.

2. The improvements to the farm and the investment in the cattle enterprise.

■ The power of a conservator is set out in ORS 126.313. The authority to continue or participate in the operation of an enterprise without prior court approval is recognized. However, ORS 126.313(3), in accord with the general common law, *see e.g.,* 39 Am Jur 2d Guardian and Ward §82 (1968); 39 CJS Guardian and Ward §70 (1976); Restatement (Second) Trusts §227, Comment $f$ (1959), does not grant authority to the conservator to begin a new business with the entrusted funds.

■ The purpose of a conservatorship is to manage and

preserve the estate's assets and to apply them for the proper care of the ward, ORS 126.157(2). In order to meet the "prudent man" standard set out in ORS 128.057 a fiduciary must invest or reinvest the estate in the exercise of due care and diligence. A conservator is not an insurer of the funds of the estate, but any investment which is considered speculative is improper, *Marshall v. Frazier,* 159 Or 491, 527, 80 P2d 42, 81 P2d 132 (1938). The business judgment required of a conservator leaves no room for the risk eager. At the hearing the conservator stated that it would take three to five years to realize the investment from the cattle. Commencement of an illiquid breeding cattle enterprise for an 80 year old ward, was speculative.

A conservator is bound to exercise scrupulous good faith in the management of the estate's affairs. Everything the conservator does must be for the benefit of the ward and to protect her economic interest. *Larsell v. Clarke,* 9 Or App 61, 72, 495 P2d 57, 62 *aff'd* 263 Or 620, 503 P2d 500 (1972). We agree with the probate court that there was an element of overreaching and bad faith present in this cattle investment. Conservator treated the enterprise as her own and took a great interest in the estate's cattle. At one point in the hearing she testified that at the termination of the conservatorship they were sold at a stockyard sale as beef but later recanted and admitted that she substituted her own cattle and kept the estate's registered breeders for herself. Her daughters were even permitted to show the estate's calves at a local county fair. We agree with the probate court when it stated in its order that "the conservator played footloose with the assets in her trust."

All expenses relating to the purchase, care and handling of the cattle are denied. In conjunction, all expenses for permanent improvements adapting the farm for cattle raising are similarly denied because there is no evidence these improvements have any present or future benefit to the estate. Although ORS 126.313(8) grants to the conservator the power to

make repairs, without prior court approval, it does not give her authority to do so unreasonably, or to make permanent improvements of the type here at issue.

3. The 1975 hay harvest expenditures.

■ At the time the conservatorship began the farm was being used for growing hay. That the crop was spoiled, after cutting, by an abundance of rain does not of itself cause responsibility for the loss to attach to the conservator.

4. Payments to conservator's daughters for their services to the estate.

■ There is in evidence sufficient recordation of time spent and duties performed to authorize these payments. Any sums paid to conservator's husband for his aid were included as part of the cattle operation and are denied. The probate court denied any fees related to Mrs. Mars' services as conservator, and they are not a part of this appeal.

5. The gifts made by conservator to herself and her family.

■ ORS 126.327 confers the power to a conservator to make reasonable gifts which the ward might have been expected to make. The testimony is uncontradicted that the ward, in the past, had indulged in a regular practice of Christmas and birthday gifts to the immediate parties, but is conflicting as to the amount. Although our review is de novo, because of this conflict in testimony we give considerable weight to the findings of the probate judge who was in a better position to assess the credibility of the witnesses. *Cloyd v. McPherson,* 283 Or 137, 139, 582 P2d 423 (1978). The challenged gifts represent a continuation of the family custom. The gifts are allowed.

6. Miscellaneous expenditures.

■ The remainder of ward's objections are of minor importance. The sale of fence wire and posts by

conservator to the estate is denied. The sale of paneling in the amount of $32.50 is affirmed since the ward ratified the sale by taking it to one of her residental rental units. The sale of the tractor bumper and logging chain to the estate is voided under ORS 126.297, the goods are to be returned to the conservator and the expenditure is to be denied. The other instances of sales between the conservator and the estate were set aside by the probate court and are not a part of this appeal. Finally, since the camera and adding machine were purchased to aid conservator in her duties and were delivered to protected person, she will not be permitted to surcharge conservator for the expense thereof.

Affirmed in part; reversed in part.