Argued and submitted March 13, affirmed in part; reversed and remanded in part
May 22, 1985

In the Matter of the Conservatorship
of Wilbur Harrington, Incompetent.

HARRINGTON,
*Respondent,*

*v.*

THOMAS,
*Appellant.*

(67-64-G, 67-29-G; CA A32274)

700 P2d 304

Sam A. McKeen, Klamath Falls, argued the cause and filed the brief for appellant.

Janet A. Metcalf, Portland, argued the cause for respondent. With her on the brief were English & Metcalf and Theodore D. Lachman, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

**GILLETTE, P. J.**

This appeal follows a consolidated hearing on respondent's objections to final accountings prepared by appellant. The accountings were submitted on termination of an incompetent's conservatorship and the administration of a deceased's estate. Appellant, who was the personal representative in both cases, appeals only the trial court's judgment in the conservatorship matter. We affirm in part and reverse in part.

The course of events leading to this appeal began with the death in 1966 of Delwin Harrington, a member of the Klamath Indian tribe. The sole asset in Delwin's estate was his expectant share in the Klamath Indian Management Trust (KIMT), valued by the trust administrator when Delwin died at $35,000.

Appellant, then an attorney, was retained by Delwin's aunt, Gertrude Harrington, to represent her as an heir of Delwin's estate. During his initial consultation with Gertrude, appellant learned that Delwin's grandfather was still alive. Appellant tentatively concluded that the grandfather, Wilbur Harrington, was the sole heir to Delwin's estate. Arrangements were made to have appellant begin an heirship determination concerning Delwin's estate on behalf of Wilbur. Because Wilbur was incompetent, Gertrude petitioned to be and was appointed by the court as conservator of his estate. Gertrude then petitioned the court for authorization to retain appellant as counsel for the conservatorship on a contingent fee basis in the heirship determination.[1] Authorization was granted by the court on March 9, 1970.

On September 23, 1970, Wilbur was declared the sole heir to Delwin's estate. The court ordered the personal representative of Delwin's estate to pay appellant, as attorney for Wilbur's conservatorship, all the money coming into the estate. As noted, the only asset was entitlement to periodic payments from KIMT. After receiving payment from the

---

[1] The petition and subsequent authorization referred to the standard Oregon State Bar contingent fee schedule then in force. It provided in part:

"A contingent fee based on the following schedule, if agreed to by client, is proper: settling without action, 25%, after action but before trial, 33 1/3%, during or after trial, 40%.

personal representative, and after deducting 40 percent as his claimed fee for the heirship determination proceeding, appellant passed the remaining 60 percent on to Wilbur's conservatorship account.

That practice continued with other payments until Wilbur's death in 1980.[2] In 1974, appellant also had become the personal representative of *Delwin's* estate. He acknowledges that the only reason Delwin's estate was kept open was to enable him to collect his fee on the funds passing through it.[3] He also succeeded Gertrude as guardian of *Wilbur's* person and conservator of the estate and filed annual accountings, which were approved by the court from 1974 through 1980. As one might expect, in addition to the 40 percent fee he continued to collect from the KIMT disbursements paid through Delwin's estate,[4] appellant also collected significant attorney fees for his time spent on estate administration and conservatorship matters in connection with both estates.

After Wilbur's death his son, respondent here, initiated probate in Jefferson County. In 1981, appellant filed his final accountings in both Delwin's and Wilbur's estates in Klamath County. Respondent filed objections and, on October 29, 1981, a hearing was held. The estate and conservatorship matters were consolidated for trial, but it is clear from the record that the parties intended to bifurcate the hearing. The parties began the hearing with the understanding that objections to appellant's final account in Delwin's estate would be dealt with first. It is also clear from the record that, at the end of the day, both parties felt that another hearing would be scheduled to deal with the objections to the conservatorship accounting, although the two matters were closely intertwined and much of the evidence that had been presented already related to both.

The trial judge left it up to the parties to decide

---

[2] We agree with the trial court's conclusion that the proper procedure would have been for appellant to deposit all of the disbursements from Delwin's estate into the conservatorship account and then collect his fee through the representative.

[3] Appellant believed that this was necessary, because the trustee bank would not recognize assignments on future distributions accruing to the tribal beneficiaries.

[4] KIMT disbursements ultimately paid into Delwin's estate amounted to $298,478.

between themselves when another hearing would be scheduled. The record does not reflect that any effort was made by either party to schedule a further hearing. On March 26, 1982, five months after the initial hearing, the trial court ordered appellant to return $100,000 of his claimed attorney fee to respondent, as representative of Wilbur's probate estate.

Appellant appealed the order to this court, *Harrington v. Thomas,* 63 Or App 292, 663 P2d 1298, *rev den* 295 Or 617 (1983), but the appeal was dismissed, because the order appealed from was not final. Subsequently, on November 29, 1983, the trial court ordered that fees earned by appellant in other, unrelated probate proceedings, but which had been impounded in response to disbarment proceedings that had been brought against appellant, be paid to respondent. Finally, on February 9, 1984, the trial court issued its final judgment, incorporating the March, 1982, order. This appeal followed.

Appellant presents five assignments of error. First, he argues that he was not afforded a full hearing on the objections to the Wilbur Harrington conservatorship accounting. Specifically, he claims that he was denied due process of law when the trial court ruled that amounts he had collected from Wilbur's conservatorship as a contingent fee were excessive. We disagree.

■    Our *de novo* review reveals that the evidence offered at the hearing was, for the most part, devoted to accounting for the disposition of the KIMT funds paid to appellant through Delwin's estate. Much evidence concerning creation of the contingent fee agreement and what work it entailed was also received. That resulted from the intertwining of the evidence concerning the conservatorship and the estate with respect to the KIMT payments and appellant's interest therein. Thus, the trial court had a great deal of evidence which, though introduced during review of the estate accounting, also related to the contingent fee agreement associated with the conservatorship and from which the trial court could reach a conclusion that the fees collected by appellant were excessive.

■    If appellant believed that another hearing was necessary, he had ample opportunity to inform the trial court. In

*Bentley v. SAIF,* 38 Or App 473, 479, 590 P2d 746 (1979), we said:

> "Normally appellate courts require a litigant to make known his objections in the lower tribunal in order to urge the objection on appeal. The purpose of this rule is to allow the tribunal to correct any error and obviate the necessity of reversal and remand for additional proceedings."

Once the trial court issued its March, 1982, order, appellant could have made his objections known, ORCP 62B, or requested that additional testimony be taken. ORCP 64C. He did not do so. The burden was on appellant fully to present his case in a timely manner, and we think it inappropriate for appellant now to assign his failure as an error of the trial court.

■      Appellant's second assignment assails the trial court's failure to consider the 1970 court order authorizing appellant's service as attorney for the Wilbur Harrington conservatorship as a binding order granting appellant his contingent fee. Closely related is appellant's third assignment, objecting to the trial court's finding that the fee ultimately collected were excessive. We agree with the trial court's conclusion that the 1970 order merely allowed Wilbur's guardian to enter into an attorney-client relationship and was not intended to give appellant carte blanche authority to siphon off approximately $119,000 in fees over an 11 year period. That practice became particularly objectionable after 1974, when appellant was also acting as Wilbur's guardian and was in effect paying himself fees, which the trial court also found excessive. Under ORS 126.297,[5] the trial court had authority to void the transaction. We agree with the court's decision to do so.

Appellant urges a contrary view, relying on the 1970 petition signed by Wilbur's then guardian, Gertrude, as written evidence of the contingent fee agreement with the conservatorship. However, appellant's reliance on the 1970 petition

---

[5] ORS 126.297 provides:

"Any sale or encumbrance to a conservator, * * *, or any transaction which is affected by a substantial conflict of interest is voidable unless the transaction is approved by the court after notice as required under ORS 126.007 to interested persons and others as directed by the court and a hearing of objections, if any."

requires that there have been full disclosure and that Gertrude have understood the nature of the agreement. *Schroeder v. Schaefer,* 258 Or 444, 451, 477 P2d 720, 483 P2d 818 (1971). The testimony of appellant and Gertrude is at odds on this issue. Our review is *de novo* but, when credibility is an issue, we commonly give great weight to the findings of the trial judge. *Willbanks v. Mars,* 37 Or App 795, 801, 588 P2d 118 (1978), *rev den* 285 Or 319 (1979). This is such a case. We adopt the trial court's findings, which accept Gertrude's testimony that she did not remember signing a contingent fee agreement and that appellant's only disclosure regarding a fee was that the heirship determination would not cost very much.

■    The trial court went on to note that the 1970 petition relied on by appellant included a disclosure that the conservatorship's major asset, Delwin's KIMT expectancy, had an appraised value of $35,461.50. That disclosure, the trial court felt, limited the scope of the contingent fee agreement to 40 percent of the appraised value. The trial court also found that the ultimate fee claimed by appellant was excessive, considering the amount of work necessary to prosecute the heirship determination. We agree. A contingent fee contract

> "will not be upheld if it has been obtained by fraud, mistake, or undue influence, if it is oppressive or extortionate, or if it involves a breach of fiduciary relationship. Moreover, such a contract is unenforceable if it provides for compensation which is disproportionate to the value of the services rendered, or if it is found by the court to be excessive, unreasonable, and unconscionable." 7A CJS, *Attorney and Client,* § 316 at 604.

The trial court did not err in finding that the appellant's fee excessive and in ordering restitution of a part of it.

■    Next, appellant objects to the trial court's failure to give binding effect to interim orders approving annual accountings of the conservatorship. Those accountings were prepared by appellant, either as attorney for Wilbur's conservatorship or, after 1974, as his guardian. We agree with the trial court that the interim accounting approvals do not serve as court approval of appellant's contingent fee. It was appellant's practice to withdraw his 40 percent fee from

Delwin's KIMT disbursements before depositing the remaining money into the conservatorship account. Thus, none of the conservatorship accountings clearly reveals appellant's interest in the KIMT disbursements; they cannot now be offered as justification for appellant's fee deductions from each disbursement.

Appellant's last two objections require only brief discussion. As noted earlier, on November 29, 1983, the trial court ordered that $26,639.56 in attorney fees "earned" by appellant in other, unrelated cases—but which had been impounded and held in trust by the trial court—be paid to respondent. If those fees indeed were earned by appellant, we are at a loss to understand under what authority the trial court acted in summarily disbursing them to respondent. Although we suspect error on the part of the trial court, the record before us offers no guidance as to the proper disposition of those funds. Therefore, we reverse and remand to the trial court for further proceedings relating to those funds.

As a final matter, appellant asserts and respondent concedes that the court's assessment of 10 percent interest on the judgment amount is improper. The applicable legal rate of interest is 9 percent. ORS 82.010(3). On remand, after reassessment of the propriety of the court's award to respondent of funds from unrelated accounts, the court's decree should also be amended with regard to interest.

Affirmed in part; reversed and remanded in part.