Keely Rae Johnson FUENTES,
as Successor Conservator and Guardian ad litem
of Allison Marie Johnson Fuentes;
and Allison Marie Johnson Fuentes, an individual,
*Appellants,*

*v.*

Mary L. TILLETT,
*Respondent.*

Clackamas County Circuit Court
P0806024; A143362 (Control)

Allison Marie Johnson FUENTES;
and Keely Fuentes,
Successor Conservator for Allison Fuentes,
*Plaintiffs-Appellants,*

*v.*

Mary TILLETT,
St. Paul Fire & Marine/Travelers Insurance Company,
and Douglas M. Fellows,
*Defendants-Respondents.*

Clackamas County Circuit Court
CV09080193; A145563

Keely FUENTES,
as Successor Conservator for
Allison Marie Johnson Fuentes;
and Allison Marie Johnson Fuentes, an individual,
*Appellants,*

*v.*

Mary L. TILLETT;
St. Paul Fire & Marine/Travelers Insurance Company;
and Douglas M. Fellows,
*Respondents.*

Clackamas County Circuit Court
P0806024; A146934

326 P3d 1263

Ira R. Weatherhead argued the cause and filed the opening brief for appellants. With him on the reply brief was Draneas & Huglin, P.C.

Brian R. Talcott argued the cause for respondents Mary L. Tillett and St. Paul Fire & Marine/Travelers Insurance Company. With him on the brief were Donald E. Templeton and Dunn Carney Allen Higgins & Tongue LLP.

James M. Callahan argued the cause for respondent Douglas M. Fellows. With him on the brief was Callahan & Shears, P.C.

Before Wollheim, Presiding Judge, and Nakamoto, Judge, and Schuman, Senior Judge.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

This consolidated appeal involves interrelated judgments in two separate actions concerning a conservatorship for Allison Fuentes. The first action, the conservatorship proceeding, was commenced in 1999 in the probate court after the death of Allison's mother; Allison's aunt, Mary Tillett, was appointed conservator and guardian *ad litem* for Allison. In 2008, Allison's sister, Keely Fuentes, became the successor conservator and filed objections on behalf of Allison to the annual accountings that had been submitted by Tillett between 1999 and 2008. Keely's objections alleged that Tillett had mismanaged conservatorship funds during that time and had concealed that mismanagement from the probate court during the annual accounting process. The probate court entered a judgment dismissing those objections as untimely, ruling that Tillett's intermediate accountings, which had been approved each year by the court, were final and no longer subject to objection.

Keely and Allison (plaintiffs)[1] then sought relief by way of a separate civil action alleging tort and other claims against Tillett, as well as Tillett's attorney, Douglas Fellows, and the surety that issued a bond for the conservatorship, St. Paul Fire & Marine Insurance Company/Travelers Insurance Company (St. Paul). The trial court[2] dismissed those claims, however, on the grounds that the probate court had exclusive jurisdiction over protective proceedings, that plaintiffs had alleged "precisely the same claims brought within the conservatorship proceedings," and that Fellows had been acting within the scope of the attorney-client relationship and was therefore protected by a qualified privilege.

At that point, plaintiffs returned to probate court, where they filed a petition for surcharge that asserted the same claims that had been dismissed in the civil action. The

---

[1] For clarity, we refer to Keely and Allison as "plaintiffs" in both the probate proceedings and the civil action.

[2] Throughout this opinion, we use "probate court" when referring to the circuit court exercising probate jurisdiction, and "trial court" when referring to the circuit court exercising its general jurisdiction in plaintiffs' civil action. Of course, there is but one circuit court, so it is possible that the same judge may be sitting as the probate court on one matter and next be sitting as a circuit court judge in a civil action.

probate court likewise refused to entertain those claims, ruling that the surcharge petition raised the same issues that Keely had initially raised in her untimely objections to the final accountings, that she was precluded from relitigating those same issues, and that, as the trial court had ruled, Fellows was protected by a qualified privilege.

On appeal, plaintiffs contend that the probate court and trial court erroneously denied Allison the opportunity to challenge the mishandling of her estate, effectively insulating Tillett and Fellows from any liability for their actions. For the reasons that follow, we conclude that plaintiffs should have been permitted to pursue relief against Tillett and St. Paul in the probate court, but that their claims against Fellows were properly dismissed. We therefore reverse and remand the judgments in the probate case with respect to Tillett and St. Paul, but otherwise affirm, including the circuit court's judgment dismissing the civil action.

## I. BACKGROUND

The relevant background facts are not disputed for purposes of this appeal. In 1999, the conservatorship was established after Allison's mother, Marie Johnson Fuentes (Marie), died as a result of complications caused by the prescription drug Fen-Phen. The conservatorship was funded with settlement proceeds from a wrongful death action against the manufacturer of Fen-Phen filed on behalf of Marie's estate by California attorney Arthur Sherman, and Sherman held back additional funds to pay any remaining medical bills against Marie's estate. On September 8, 1999, Tillett was appointed as guardian and conservator for Allison and Keely, who were ages eight and 12 at that time. Tillett filed an initial conservatorship inventory showing that Allison's estate had assets close to $600,000.[3]

Between 1999 and 2008, Tillett received a monthly salary from the conservatorship estate, in an amount approved by the probate court, for providing "nanny services" to plaintiffs. In addition to that salary, Tillett received

---

[3] A guardianship and conservatorship established for Keely, who was under 18 years old at that time, also showed an initial inventory for Keely's estate assets close to $600,000.

regular monthly payments for plaintiffs' benefit, including a check from the Social Security Administration, child support payments from plaintiffs' father, and a lump-sum allowance from the conservatorship checking account—in an amount approved by the court—to cover plaintiffs' monthly living expenses. Tillett also received funds by request from the conservatorship checking account for the reimbursement of additional expenses on an as-needed basis.[4]

Fellows represented Tillett in her capacity as conservator. Fellows managed the conservatorship checking account for Tillett and issued monthly checks to Tillett for her salary and expense allowance, as approved by the court, as well as supplemental checks for the reimbursement of additional expenses that Tillett requested and Fellows approved. Fellows also filed annual accountings in the probate court on Tillett's behalf, selected and managed investments for the conservatorship, facilitated the purchase of a residence for plaintiffs, facilitated Tillett's purchase of interests for herself in that residence with loans from the conservatorship, and served as the point of contact with Sherman on plaintiffs' behalf regarding the funds that Sherman withheld from plaintiffs' share of the Fen-Phen settlement proceeding. Fellows petitioned for attorney fees on an annual basis, which the probate court approved.

For the first eight years of the conservatorship, the probate court approved each of the annual accountings that Fellows filed on Tillett's behalf. Then, in 2008, Keely, no longer a minor, succeeded Tillett as Allison's guardian and conservator.[5] Thereafter, she filed a document styled "Keely Fuentes, Objections to Conservator's First through Eighth Annual Accountings." The objections alleged a wide range of misconduct by Tillett, including the receipt of excessive compensation for nanny services, improper delegation of conservator duties to Fellows, her failure to account for how she spent plaintiffs' monthly expense allowance, her failure

---

[4] When both minor children's estates were under Tillett's control, the annual living expenses were never less than $70,000.

[5] In July 2005, the probate court issued an order closing the guardianship and conservatorship of Keely. This appeal concerns issues related only to Allison's conservatorship.

to pay her *pro rata* share of house-related expenses, her failure to account for and repay loans from the conservatorship to purchase an interest in the residence, use of conservatorship funds for personal expenses without disclosure to the court, receipt of conservatorship funds after she left the residence and moved to southern Oregon in 2008, and mismanagement of the conservatorship funds in several other ways.[6]

In response to the objections, Tillett filed a motion for summary judgment. Tillett argued that Keely's objections were barred by the plain language of ORS 125.480, which provides:

> "Subject to appeal or vacation within the time allowed by law, *an order, made upon notice and hearing, allowing an intermediate accounting of a conservator, is final as to the liabilities of the conservator concerning the matters considered in connection with the intermediate accounting.* An order, made upon notice and hearing, allowing a final accounting is final as to all previously unsettled liabilities of the conservator to the protected person or successors relating to the conservatorship."

(Emphasis added.) Tillett pointed out that no objection was ever filed to any of the intermediate accountings, no appeal was filed from any of the orders allowing the intermediate accountings, and no motion to vacate any of those orders had ever been filed pursuant to ORCP 71. The probate court agreed with Tillett that plaintiffs' objections to the conservator's accounting were time-barred, granted summary judgment, and entered a judgment dismissing the objections. That is one of the judgments now on appeal.

Plaintiffs—Keely as conservator and Allison, who had since turned 18—then filed a civil action against Tillett, Fellows, and St. Paul, arising from conduct that occurred during the course of the conservatorship proceeding. With regard to Tillett and Fellows, plaintiffs' claims included breach of the duty to provide accountings, ORS

---

[6] Keely also filed timely objections to Tillett's ninth annual accounting, final accounting, and supplemental final accounting. Those three accountings are not at issue in this appeal. The probate court's consideration of those accountings is pending the outcome of this litigation, and the conservatorship remains open.

125.475(2) and (3); breach of the prudent investor rule, ORS 125.445(5); negligence *per se*; breach of conservator's duties, ORS 125.425; breach of fiduciary duty; abuse of a vulnerable person under ORS 124.110 to 124.140; aiding and abetting breach of fiduciary duties; and common-law negligence. Against St. Paul, plaintiffs sought recovery on the conservator's bond based on Tillett's breach of fiduciary duties.

All three defendants moved to dismiss plaintiffs' claims. Tillett and St. Paul moved to dismiss all claims for lack of subject matter jurisdiction, pursuant to ORS 125.015(1) (providing that "[t]he probate courts and commissioners provided for in ORS chapter 111 have exclusive jurisdiction of protective proceedings"), and alternatively argued that the claims against them should be dismissed under ORCP 21 A(3) because there was another action pending between the same parties for the same cause—*i.e.*, the probate case. Fellows, likewise, moved to dismiss based on lack of subject matter jurisdiction with regard to the claims against him as "co-conservator." As for the claims against him as "attorney for conservators," Fellows sought dismissal based on plaintiffs' failure to state a claim that he acted outside the scope of the lawyer-client relationship. *See Reynolds v. Schrock*, 341 Or 338, 350-51, 142 P3d 1062 (2006) (holding that "for a third party to hold a lawyer liable for substantially assisting in a client's breach of fiduciary duty, the third party must prove that the lawyer acted outside the scope of the lawyer-client relationship"). The trial court agreed with defendants on all three grounds and entered judgment in their favor. Plaintiffs appealed that judgment as well—the second judgment on appeal in this case.

Following the entry of judgment in the civil case, plaintiffs returned to probate court and filed a petition for surcharge and money award within the conservatorship proceeding, asserting the same claims that they had alleged in the civil action. This time, the probate court granted Tillett and St. Paul's motion to dismiss the petition on the ground that "the claims that are being made here are the same claims that were made previously that [the probate court] concluded were barred by virtue of [the finality of the earlier orders approving the accountings under ORS 125.480.]" Additionally, the probate court granted Fellows's motion to

dismiss for a reason that the trial court relied upon in the civil action: failure to state a claim that he acted beyond the scope of the attorney-client relationship. The probate court entered a limited judgment—the third of the judgments that plaintiffs now appeal.

## II. ANALYSIS

In this consolidated appeal, plaintiffs advance seven assignments of error concerning the three judgments. We begin with plaintiffs' assignments of error concerning rulings in the probate case, because they provide context for our analysis of the trial court's related judgment in the civil action.

### A. *The Probate Case*

In their first assignment of error, plaintiffs challenge the probate court's ruling that the first eight annual accountings were final and barred any later objections or claims regarding Tillett's handling of the conservatorship. As described above, the probate court dismissed the objections, relying on ORS 125.480, which provides that an order *"made upon notice and hearing,* allowing an intermediate accounting of a conservator, is final as to the liabilities of the conservator *concerning the matters considered in connection with the intermediate accounting."* (Emphasis added.) Plaintiffs argue that, contrary to the probate court's ruling, the orders approving the intermediate accountings were not final with regard to the matters raised in their objections and petition for surcharge because (1) the orders did not satisfy the notice and hearing requirements in ORS 125.480, and (2) the matters raised in the objections and surcharge were not previously considered in connection with the intermediate accountings. Both arguments require us to interpret the language of ORS 125.480, which we do according to the principles set out in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009); that is, we examine the text and context of the statute and any legislative history that appears to be helpful at that level of analysis, then resort to maxims of statutory construction, if necessary.

At the outset, we reject plaintiffs' contention that the trial court's intermediate accounting orders were entered

without sufficient "notice and hearing." There is no dispute that Tillett provided notice to everyone who was entitled by statute to receive it. *See* ORS 125.475(5) ("Copies of accountings must be served on all persons listed in ORS 125.060(3)."); ORS 125.060(3) (requiring service on, among others, protected persons over age 14, persons who have filed requests for notice in the proceeding, and fiduciaries appointed for the protected person). Nor are we persuaded by plaintiffs' contention that the probate court was required to hold evidentiary hearings before orders approving the intermediate accountings became final for purposes of ORS 125.480. The second sentence of ORS 125.480, which concerns approval of the final, rather than intermediate, accounting, likewise refers to an order "upon notice and hearing." And yet, the statutory scheme contemplates a hearing on a request for approval of an intermediate or final accounting only when "an objection is filed to the petition or motion and the objection is not withdrawn before the time scheduled for the hearing." ORS 125.080. The statutory text shows that the legislature intended evidentiary hearings to be required only when objections have been filed, and intended that finality attach to a final accounting that has been approved in accordance with statutory requirements. In light of that, the only plausible interpretation of the phrase "upon notice and hearing" in ORS 125.480 is that the order be preceded by the requisite notice and *an opportunity to be heard*. Those requirements were met in this case.[7]

Plaintiffs' alternative argument, which concerns the scope of the finality accorded by ORS 125.480, merits more discussion. Plaintiffs argue that, even if the intermediate accounting orders are final, they are final only with respect

----

[7] Plaintiffs, in their reply brief, argue for the first time that the probate court effectively vacated the orders on the intermediate accounting when it granted plaintiffs' motion to allow them to file their objections to the first eight annual accountings. *See* ORS 125.480 (providing that an order approving an intermediate accounting is "[s]ubject to appeal or vacation within the time allowed by law"). We will not address an entirely different theory that is raised for the first time in a reply brief. *Clinical Research Institute v. Kemper Ins. Co.*, 191 Or App 595, 608, 84 P3d 147 (2004) ("We generally will not consider a basis as to why the trial court erred that was not assigned as error in the opening brief but was raised for the first time by way of reply brief." (citing *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380-81, 823 P2d 956 (1991); ORAP 5.45(1))).

to "matters considered in connection with the accountings." ORS 125.480. Their objections, they argue, raised new matters that were not considered in connection with the accountings and, in fact, could not have been raised under the circumstances—*i.e.*, when Tillett was the only person in a position to object to her own breaches of fiduciary duty and fraudulent accountings. Tillett responds that, although the precise claims that are raised in plaintiffs' objections and surcharge were not before the probate court, the same issues were generally considered by the court in the scope of the annual accountings.

We agree with plaintiffs that the intermediate accounting orders were final only as to the conservator's liability regarding matters that were actually presented to, and considered by, the probate court when it approved the intermediate accountings. The text of ORS 125.480 provides: An intermediate accounting order is final "as to the liabilities of the conservator concerning the matters *considered in connection with* the intermediate accounting." A matter is "considered" by a court when the matter is thought about and judged. *See Webster's Third New Int'l Dictionary* 483 (unabridged ed 2002) ("consider" means "to reflect on : think about with a degree of care or caution," or "to think of : come to view, judge, or classify"); *Black's Law Dictionary* 306 (6th ed 1990) (defining "consider" as "[t]o fix the mind on, with a view to careful examination; to examine; to inspect. To deliberate about and ponder over. To entertain or give heed to."). A "matter" in this context is "something that is a subject of disagreement, strife or litigation" or "something that is to be proved (as in a court of law)." *Webster's* at 1394. Thus, the preclusive effect of ORS 125.480 is akin to issue preclusion in that it prevents parties from raising matters that have already been litigated—as opposed to matters that could have been raised but were not. *Cf. Rennie v. Freeway Transport*, 294 Or 319, 323 n 4, 656 P2d 919 (1982) (distinguishing "the process by which a final judgment binding on the parties extinguishes all of plaintiff's claims arising from the factual transaction that was at issue, whether or not those claims were actually litigated," and use of "the term 'issue preclusion' to describe the situation where, although the second and subsequent cause of action is not barred by

the prior judgment, such judgment is deemed conclusive between the parties with regard to those issues actually litigated and necessarily determined in the prior action").

We reached a conclusion consistent with that understanding in *Harrington v. Thomas*, 73 Or App 648, 655, 700 P2d 304, *rev den*, 300 Or 163 (1985), a case that involved a similarly worded predecessor to ORS 125.480. In *Harrington*, the appellant had been retained on a contingency-fee basis as counsel for the conservatorship in a proceeding to determine the protected person's interest as an heir to a share of the Klamath Indian Management Trust (KIMT). The appellant succeeded in having the protected person declared the sole heir for purposes of that interest, and the probate court ordered the decedent's estate to pay the appellant, as attorney for the conservatorship, all the money coming into the estate. After receiving payment from the estate, and after deducting 40 percent as his claimed fee for the proceeding regarding the inheritance, the appellant passed the remaining 60 percent along to the conservatorship account. That payment practice continued from 1974 through the protected person's death in 1980, and the appellant filed annual accountings during that period, which were approved by the court. In 1981, the appellant filed a final accounting, and the protected person's son objected to that accounting on the ground that the appellant had taken an excessive contingent attorney fee. After a hearing, the court agreed with the objections and ordered the appellant to return $100,000 of his claimed attorney fees to the protected person's estate. *Id.* at 650-52.

On appeal, the appellant in *Harrington* challenged the ruling regarding the contingency fee based on "the trial court's failure to give binding effect to interim orders approving annual accountings of the conservatorship." *Id.* at 654. At that time, the finality of intermediate accounting orders in conservatorships was governed by ORS 126.283(3), which provided:

> "[A]n order, made upon notice and hearing, allowing an intermediate account of a conservator, adjudicates as to the liabilities of the conservator *concerning the matters considered in connection therewith.*"

*Former* ORS 126.283 (1973), *repealed by* Or Laws 1995, ch 664, § 105.[8] We rejected the appellant's "finality" argument, explaining:

"Those accountings were prepared by appellant, either as attorney for [the protected person's] conservatorship or, after 1974, as his guardian. We agree with the trial court that the interim accounting approvals do not serve as court approval of appellant's contingent fee. It was appellant's practice to withdraw his 40 percent fee from [the inheritance] disbursements before depositing the remaining money into the conservatorship account. *Thus, none of the conservatorship accountings clearly reveals appellant's interest in the [estate] disbursements; they cannot now be offered as justification for appellant's fee deductions from each disbursement.*"

*Id.* at 654-55 (emphasis added). Thus, it was not enough that the totals in the approved accountings reflected the attorney fee's deduction, because the accountings themselves did not reveal that fact to the probate court for consideration.

In this case, the question reduces to whether the annual accountings presented—and the probate court considered—the same matters that plaintiffs later raised in their objections and surcharge petition. According to Tillett and St. Paul, "a review of the underlying record shows that the objections to the first through eighth annual accountings fell within the scope of the issues the probate court considered in entering its approval orders." They argue:

"For example, [plaintiffs] objected that Tillett's nanny pay was excessive, and that it improperly increased as Allison and Keely Fuentes got older. However, the issue of Tillett's pay was brought before the probate court right from the beginning, when Tillett filed an initial petition for payment of living and childcare expenses. As part of that petition, Tillett presented evidence showing what live-in and live-out nannies would receive as pay, and the probate court approved an initial nanny fee based on that information. She subsequently requested an increase, again documenting the basis and receiving approval from the court. In addition, Tillett's compensation was disclosed in each of the annual accountings.

---

[8] Our opinion in *Harrington* did not specifically reference ORS 126.283 (1973), but it was in effect during the relevant times.

"Similarly, Keely and Allison Fuentes objected to various aspects of Tillett purchasing an interest in the Lake Oswego home (first a one-third interest where Keely and Allison Fuentes each owned another one-third, and then a fifty percent interest once Keely reached majority and sold her interest back to Tillett and Allison). The issue was brought to the probate court's attention through Tillett's petition to invest in real property filed in early 2000, and through Tillett's petition to invest in real property to buy out Keely's share filed in December 2005. The probate court approved both transactions.

"They also objected that funds were not properly invested according to the prudent investor rule. However, the accountings included statements for the relevant investment accounts. Likewise, regarding Fellows' allegedly excessive compensation, the accountings were accompanied by a petition for attorney fees with supporting documentation.

"In short, comparing the objections to the matters addressed to the court in the annual accountings and other proceedings, it is readily apparent that all of the objections set forth in the first through eighth annual accountings fall within the scope of what was presented to the probate court for consideration and approval."

We are not persuaded that all of the objections to the first through eighth accountings were previously considered by the probate court. Although the probate court may have considered some of the issues raised in those objections (such as the appropriate fee for a live-in nanny), plaintiffs alleged other issues that had not been considered by the court. For instance, plaintiffs alleged that Tillett had misrepresented to the probate court that she was a full-time nanny, even though she was employed at another job during that time; that she continued to pay herself nanny fees even after she had moved out of the home; that she had allowed her daughter to live at the residence rent free; that she borrowed money from the conservatorship to purchase Keely's interest in the family residence but never accounted for the loan or made payments on it; that Tillett and Fellows failed to reflect certain loans in the annual accountings; and that Tillett and Fellows failed to disclose to the court or collect funds owed to the estate by the attorney who represented plaintiffs' mother in the wrongful death action. Tillett does not explain, and

we do not understand, how those matters would have been presented to and considered by the probate court during the course of approving the annual accountings, when many of those claims are predicated on Tillett's *failure to disclose* matters to the probate court.[9] Plaintiffs' petition for surcharge is even more explicit with regard to the allegations that Tillett and Fellows provided incomplete information to the probate court and that Tillett breached fiduciary duties in ways that would not have been considered by the probate court when it approved the annual accountings.

Accordingly, we conclude that the probate court erred when it ruled that plaintiffs' objections and petition for surcharge against Tillett and St. Paul were barred by ORS 125.480. With regard to intermediate accountings, that statute provides finality as to a conservator's liability concerning those matters that the court considered in connection with the intermediate accounting; it does not insulate a conservator from subsequent claims of breach of fiduciary duty that are raised while the conservatorship remains open and the final accounting has not been approved.[10] Until that time, a probate court has broad equitable powers to ensure that protected persons are, in fact, protected. *See* ORS 125.025(1) (authorizing the court to act at any time and in any manner it deems appropriate to determine the condition and welfare of the protected person and to inquire into the proper performance of the duties of a conservator); ORS 125.485(4) (authorizing the court to determine the liability of the conservator in any appropriate proceeding or action);

---

[9] The orders approving the accountings provide only the following recital: "The Court having examined the Conservator's [] Annual Accounting and finding it is true and correct, the requested incremental disbursements are appropriate, and that the just and reasonable fees for the services of the conservator's attorney rendered during the period of the accounting are appropriate[.]"

[10] It is unlikely that the legislature intended the statutory notice requirements to operate to insulate fiduciaries from liability so long as the fiduciaries complied with the technical requirements of those provisions. The United States Supreme Court's observation in *Graffam v. Burgess*, 117 US 180, 186, 6 S Ct 686, 29 L Ed 839 (1886), is once again apt:

"'It is insisted that the proceedings were all conducted according to the forms of law. Very likely. Some of the most atrocious frauds are committed in that way. Indeed, the greater the fraud intended, the more particular the parties to it often are to proceed according to the strictest forms of law.'"

*Hornbuckle v. Harris,* 69 Or App 272, 277, 686 P2d 418 (1984) (quoting *Graffam*).

ORS 125.485(2) (providing that a conservator is personally liable for torts committed in the course of administration of the estate when the conservator is personally at fault); ORS 125.025(3)(e) (authorizing the probate court to surcharge a surety for any loss caused by failure of a fiduciary to perform a fiduciary duty); ORS 111.095(1) ("The general legal and equitable powers of a circuit court are applicable to effectuate the jurisdiction of a probate court, punish contempts and carry out its determinations, orders and judgments as a court of record with general jurisdiction * * *."). We therefore reverse the judgments in the probate case as they relate to St. Paul and Tillett,[11] and we remand for further proceedings.[12]

## B. *Plaintiffs' Civil Action*

We turn next to the dismissal of plaintiffs' civil action, in which they alleged claims against Tillett, St. Paul, and Fellows. The civil action was filed after plaintiffs were denied the opportunity to pursue their objections in probate court. As previously noted, the trial court dismissed the civil action for a number of reasons, including the fact that it alleged the same claims as the pending probate case and that Fellows was shielded from personal liability because he was acting within the scope of the attorney-client relationship. For the reasons that follow, we affirm the trial court's judgment of dismissal in the civil action.[13]

---

[11] Plaintiffs' petition for surcharge, which essentially mirrored their complaint in the civil action, includes negligence claims against Fellows. The probate court dismissed those claims against Fellows on the ground that they fell within the qualified privilege accorded to attorneys under Oregon law. As we will later explain in the context of the civil action, that ruling is correct: Plaintiffs failed to state a claim that Fellows was acting outside the scope of the attorney-client privilege. Accordingly, we do not disturb the probate court's ruling as it relates to Fellows's personal liability.

[12] We express no opinion on whether late-filed objections were the proper procedural vehicle for raising plaintiffs' concerns, or whether they initially should have been raised as a petition for a surcharge or as objections to the final accounting. The probate court did not dismiss the objections on procedural grounds but, rather, on the basis of ORS 125.480. In any event, on remand, the parties and the court can determine which pleading practice to pursue. *See* ORS 111.205 (stating that "[n]o particular pleadings or forms thereof are required in the exercise of jurisdiction of probate courts").

[13] Alternatively, the trial court dismissed the civil claims on the basis that ORS 125.015(1) required the claims to be decided by the probate court. Because we affirm the trial court's dismissal of plaintiffs' civil claims on other grounds, we do not address whether that statute likewise barred plaintiffs' civil claims.

### 1. *Claims against Tillett and St. Paul*

The trial court dismissed the claims against Tillett and St. Paul because, among other things, there was "another action pending between the same parties for the same cause," ORCP 21 A(3). In *Ram Technical Services, Inc. v. Koresko*, 240 Or App 620, 630, 247 P3d 1251 (2011), we summarized the principles governing dismissal under ORCP 21 A(3):

> "In *Lee v. Mitchell*, 152 Or App 159, 164, 165, 953 P2d 414 (1998), we recognized that a dismissal for another action pending under ORCP 21 A(3) furthers the same purpose as that underlying the application of general claim preclusion principles—*viz.*, to 'prevent[] requiring a party to litigate the same claim twice on the merits.' Thus, there is a 'close connection' between dismissal under ORCP 21 A(3) and the claim preclusion doctrines of merger and bar, and 'determining whether either applies involves similar considerations.' *Lee*, 152 Or App at 164-65. Accordingly, '[i]f entry of a judgment in the other pending actions would preclude plaintiffs from asserting any claims in this case, the court should dismiss those claims.' *Id.* at 166 (footnote omitted).
>
> "In making that determination, we are guided by claim preclusion principles that we outlined in *G. B. v. Morey*, 229 Or App 605, 608-09, 215 P3d 879 (2009), *rev den*, 347 Or 608 (2010). Specifically, in that case, we explained:
>
>> "'The doctrine of claim preclusion prohibits a party from relitigating the same claim or splitting a claim into multiple actions against the same opponent. The rule forecloses a party who has litigated a claim against another from further litigation on that same claim on any ground or theory of relief that the party could have litigated in the first instance. A "claim" is defined broadly as a group of facts which entitled the plaintiff to relief. In deciding whether a group of facts is part of the same claim, we inquire whether the transactions were related in time, space, origin, or motivation, and whether they form a convenient unit, as well as whether they were substantially of the same sort and similarly motivated.'
>
> "229 Or App at 608-09 (citations, internal quotation marks, and brackets omitted)."

Here, we agree with the trial court's conclusion that plaintiffs were simultaneously asserting the same group of facts—*i.e.*, Tillett's mishandling of the conservatorship—in the probate case and the civil action. For the reasons explained above, plaintiffs are entitled to seek relief in the probate court for Tillett's alleged mishandling of the conservatorship assets. They are not entitled to litigate the same facts, and seek the same relief, against Tillett and St. Paul in two different forums at the same time. The trial court correctly dismissed the civil claims against those defendants under Rule 21 A(3) on the basis that the same cause was pending between the parties in the probate court.[14]

## 2. *Claims against Fellows*

Finally, we turn to the trial court's ruling that plaintiffs failed to state a claim against Fellows, Tillett's attorney. The trial court reasoned that plaintiffs failed to plead sufficient facts to take Fellows's allegedly negligent conduct outside the qualified privilege accorded to attorneys under Oregon law. We review that ruling for legal error, accepting plaintiffs' allegations and giving them the benefit of all favorable inferences that can be drawn from those allegations, *see Bailey v. Lewis Farm, Inc.*, 343 Or 276, 278, 171 P3d 336 (2007) (stating that standard of review).

In *Reynolds*, the Supreme Court explained the qualified privilege that attorneys have when representing fiduciaries:

> "[T]his court's earlier decisions hold that a person may be jointly liable with another for substantially assisting in the other's breach of a fiduciary duty owed to a third party, if the person knows that the other's conduct constitutes a breach of that fiduciary duty. Our tort case law also makes clear, however, that, if a person's conduct as an agent or on behalf of another comes within the scope of a privilege, then the person is not liable to the third party."

---

[14] Plaintiffs do not develop any argument that their claims against Tillett and St. Paul in the probate case are based on a different set of facts from those in the civil case; their argument is that, given the probate court's refusal to hear their objections, they have been denied an opportunity to litigate against Tillett and St. Paul in either forum. Indeed, plaintiffs acknowledge that they "are not asking the court to allow [them] to move forward simultaneously in both the trial and probate courts." For the reasons previously explained, plaintiffs will have an opportunity to raise their objections in probate court.

341 Or at 350 (internal citation omitted). The privilege between attorney and client is one such privilege; accordingly, "for a third party to hold a lawyer liable for substantially assisting in a client's breach of fiduciary duty, *the third party must prove that the lawyer acted outside the scope of the lawyer-client relationship.*" *Id.* at 350-51. The rule "protects lawyers only for actions of the kind that permissibly may be taken by lawyers in the course of representing their clients. It does not protect lawyer conduct that is unrelated to the representation of a client, even if the conduct involves a person who is a client." *Id.* at 351. Likewise, the rule does not protect lawyers "who are representing clients but who act only in their own self-interest and contrary to their clients' interest," or extend to "actions by a lawyer that fall within the 'crime or fraud' exception to the lawyer-client privilege ✶✶✶." *Id.* at 351.

On appeal, plaintiffs contend that their pleadings "specifically alleged numerous actions by Fellows which exceeded the permissible scope of advice and legal services an attorney would ordinarily provide to a conservator." Plaintiffs direct us to their allegations that Fellows actively managed the conservatorship assets; directed the investment of conservatorship assets into a speculative, high-risk fund; controlled the conservatorship accounts by paying bills and issuing checks to Tillett; signed checks to Tillett without requiring proper accounting of how the funds were used and after she ceased to act as conservator and guardian; was instrumental in the process to enable Tillett to borrow money from the conservatorship estate to purchase a share of petitioners' residence; and enabled Sherman to retain conservatorship funds without taking adequate action to protect the conservatorship estate's interests.

A detailed analysis of those allegations would not benefit the bench, the bar, or the public. Suffice it to say that all of Fellows's activities were related to his representation of Tillett, were performed on her behalf, and did not fall within the crime or fraud exception to the lawyer-client privilege for purposes of *Reynolds*. Thus, even assuming that all of the allegations are true, and that Fellows actively assisted Tillett's breach of her fiduciary duties, the allegations do not state a claim for relief against Fellows

personally. Accordingly, we affirm the trial court's dismissal of plaintiffs' claims against Fellows.[15]

In Case No. P0806024, August 21, 2009, judgment reversed and remanded; October 12, 2010, judgment reversed and remanded as to claims against Tillett and St. Paul, and affirmed as to claims against Fellows. In Case No. CV09080193, affirmed.

---

[15] Plaintiffs also argue that they alleged sufficient facts to establish that Fellows was the "*de facto*" conservator for Allison, thereby creating a special relationship with her that would give rise to personal liability for economic loss. *See Roberts v. Fearey*, 162 Or App 546, 552, 986 P2d 690 (1999) ("Although Oregon has not formally adopted a discrete test, the cases in this area focus on whether there is a *de facto* relationship between the defendant and the injured nonclient of a nature that justifies imposing a special duty on the defendant to protect the nonclient against economic losses."). We disagree. The ordinary rule is that, "when an attorney undertakes to represent a fiduciary, he or she represents only the fiduciary and does not, at the same time, maintain an attorney-client relationship with those to whom the fiduciary-client owes a duty." *Id.* at 553. Although that rule might not apply when, for instance, "the attorney purported to act as the plaintiff's attorney by filing a motion on behalf of the plaintiff," *Id.* at 551-52 (quoting *Lee v. Nash*, 65 Or App 538, 543, 671 P2d 703 (1983), *rev den*, 296 Or 253 (1984)), plaintiffs here have not alleged sufficient facts to demonstrate that Fellows agreed to represent or purported to represent Allison as opposed to Tillett. *See id.* at 553-54 ("We note first that this case is not like any of the other cases in which we have found sufficient circumstances to overlook the privity requirement. This is not a case, as in *Lee*, where the attorney blurred the lines of representation by acting on behalf of the trusts or the beneficiaries. Defendant here adamantly denies ever having agreed to represent or having purported to represent the trusts or beneficiaries, and plaintiff does not contend otherwise."). Under these circumstances, plaintiffs' remedy for breach of fiduciary duty is against the conservator, not the conservator's attorney. *Cf. id.* at 556 ("Our conclusion does not necessarily foreclose redress for a trust or its beneficiaries. * * * Successor trustees may still sue their breaching predecessors, and if the breaching trustees received inadequate legal services, they in turn may sue their attorneys for malpractice.").